THE HOPKINS MANUFACTURING CO., GEO. W. HOPKINS AND DAVID H. HOPKINS v. CHAS. F. RUGGLES.

*Parties—Agreements for ten per cent. interest—Commissions for making collections—Vexatious appeals.*

An appellate court will not feel bound to consider whether it was technically proper to implead a particular defendant, if the written

stipulations of the parties and their mode of conducting the litiga-
tion have been such as to practically waive the point, and no de-
murrer has been interposed.

Agreements to pay ten per cent. interest are invalid in Michigan, unless
in writing.

In an accounting between the parties to a joint enterprise, a claim by
one against the other for commissions for making collections in the
joint business is properly disallowed, if there was no express agree-
ment therefor.

An allowance made by a commissioner, in proceedings for an account-
ing, cannot be raised by an appellate court in favor of a party not
appealing.

An agreement between the parties to a logging contract to share the ex-
penses equally, covers not only the cost of property purchased for
camp purposes, but also necessary payments of interest on such pur-
chases.

Damages for vexatious appeals are not given unless the appeal is
groundless or oppressive, or there is clear proof of intentional wrong
on the part of the party taking it.

Courts will incline to charitable views in construing parol contracts and
ascertaining therefrom the motives and intention of the parties,
where the proofs rest upon imperfect recollection, and there is op-
portunity for misunderstanding.

Appeal from Manistee. (Judkins, J.) June 14.—Oct. 17.

BILL for accounting.   Defendant appeals.   Affirmed.

*Ramsdell & Benedict* and *Byron M. Cutcheon* for com-
plainants.

*Hughes & Smiley* for defendant.

SHERWOOD, J.   The bill in this case is filed for an ac-
counting between the complainants, Hopkinses, and the
defendant, they having been engaged for a number of
years in lumbering together.   The Hopkinses were part-
ners under the firm name of Hopkins Brothers, and it is
claimed by them that they were partners with Ruggles in
the business they did with him, but this relation is denied
by Ruggles.   He admits, however, he owned a half inter-
est in the business.

Some point is made by defendant's counsel as to the Hopkins Manufacturing Company being properly made a party to the suit. We do not think we are called upon at this time to consider or pass upon that question, especially as all technicalities upon the point seem to have been waived by the parties, both by their written stipulations and in their manner and conduct of the litigation, and no demurrer having. been interposed to the complainants' amended bill upon any such ground.

The determination of the case required the investigation of a large number of complicated accounts, and it was referred to D. S. Harley, Esq., of the city of Manistee, as special commissioner, to take the testimony and make report of the situation of the account between the parties, and his findings upon the law and the facts. The testimony taken is quite voluminous, and the commissioner made his report in the premises on the 8th day of April, 1882, and finds a balance due from the defendant at that date of $2396.80. The report of the commissioner is faultless in form, and his conclusions of law and fact show very careful and critical examination of the testimony, and have furnished us much aid in reviewing the case. It was excepted to by both parties, and after a full hearing had before the circuit judge he overruled all the exceptions taken, and by decree confirmed the report of the commissioner. The defendant appeals to this Court.

Seven exceptions taken to the report by defendant's counsel are relied upon. No exception seems to have been taken to any of the footings made by the commissioner ; we shall therefore assume the correctness of his figures and footings.

In 1871 the Hopkins Brothers and the defendant owned (each having an undivided half interest therein) about 1500 acres of pine lands, and about the 20th of September of that year a verbal agreement was entered into between the Hopkins Brothers and defendant to lumber these lands, convert the timber into logs, and sell the same. At the time this agreement was made the Hopkins Brothers had

built several shanties on the land and a supply road to the timber thereon. They had also a contract with Cushman, Calkins & Co. to put in the Manistee river from their lands several million feet of logs. They had also established two camps from which to conduct the business. By the terms of the contract, as the testimony tended to show, the Hopkins Brothers were to furnish and equip the camps with suitable teams and camp equipments, and interest was to be allowed them for their use, and the loss or depreciation, at the close of the business, was to be replaced, or the value thereof allowed to Hopkins Brothers in money. They were to supervise the camps, and for this service were to have fifty cents per thousand feet. They were to put the logs in the Manistee river. The parties were to share the expenses and profits of the business equally; the Hopkins Brothers were, however, to furnish all moneys necessary to carry on the business until it was completed.

The defendant lived in the city of Manistee, and was engaged in buying and selling lands and the banking business, and does not appear to have had much to do with the business except to assist in making contracts for the sale of logs and collecting the moneys on such sales.

After the contract was made by the parties above stated, Hopkins Brothers had a contract for putting in logs from what were called Neil Leitch lands. They also had a tract of pine lands of their own, called the canal lands, from which the parties took logs. By contracts between the Hopkins Brothers and defendant, the latter was to share in each of these contracts, and also in the proceeds of the logs taken from the canal lands. None of these contracts were reduced to writing, but the testimony tended to show that upon the contract with Cushman, Calkins & Co., and upon the Neil Leitch contract, the expenses were to be borne and the profits divided equally between Hopkins Brothers and defendant, except that the former were to have fifty cents extra per thousand feet for superintending the business, and that the same terms were to govern

for timber taken from the canal lands, except, in addition to the fifty cents extra, the Hopkins Brothers were to have $2.50 per thousand feet for stumpage.

The complainant also claimed, and the testimony tended to show, that there was an agreement on the part of defendant to pay the Hopkins Brothers ten per cent. on moneys advanced by them in carrying on the business. The commissioner properly disallowed this claim. The statute requires such a contract to be in writing in order to be of any validity.

The defendant charged the Hopkins Brothers commissions for making collections on account of the joint business. This was also disallowed by the commissioner, and correctly. The relation existing between these parties, (if not that of partnership, which is not necessary now to decide,) was one not authorizing, or in any manner implying, any such liability on the part of the Hopkins Brothers, and no express contract being shown to that effect, we think the commissioner's finding correct upon this point.

There is a great discrepancy between the amount of the logs as scaled at the rollway and that at the manufacturer's mill, the latter falling short nearly two million feet. The commissioner finds, upon the testimony, that the scale at the rollway should govern; that it was so intended by the parties when the contract was made, and that it was necessary in order to protect the rights of the Hopkins Brothers. A careful inspection of the evidence has led us to the same conclusion.

The commissioner allowed the complainants fifty cents per thousand feet for the logs put in from the Cushman & Co. lands, and from the Neil Leitch lands. The evidence supports this finding. It can hardly be supposed that the Hopkins Brothers would have given the defendant the benefit of a profitable contract, which had been partly filled by them, without some compensation, and if they did not get it in this way they certainly received nothing.

The arrangement claimed by Hopkins Brothers with defendant for the logs taken from the canal lands, is not only

reasonable, but supported by the testimony in the case. Indeed, we think the commissioner would have been well warranted in increasing the amount credited for logs taken from these lands, but as complainants have not appealed, we are not at liberty to change the commissioner's findings.

The defendant's fifteenth and sixteenth exceptions to the report are not well taken.

It clearly appears, from the testimony, the Hopkins Brothers charged no more to joint account for camp expenses than they paid out, and it can make no difference whether such expenses were in payment of interest, or for goods purchased in supplying the camps, if necessary for that purpose. The Hopkins Brothers were to furnish all these expenses in the first instance, and be reimbursed from the proceeds of the business when closed.

Upon a careful examination of this record we discover no error in the findings of the commissioner or the decree of the circuit court, of which the defendant can justly complain.

Counsel for complainants asks that damages may be allowed them, under the statute, for taking vexatious appeals. We do not think this a proper case for the application of that statute. The appeal must be groundless or oppressive, or there must be clear proof of intentional wrong on the part of the appellant, before the Court will feel at liberty to impose such damages.

The contract under which the complainants seek to recover, existed entirely in parol, and could be proved only by the parties, whose testimony on many important points was conflicting. There was opportunity for misunderstanding and imperfect recollection, and the charitable view is always the proper one in such cases, in ascertaining the motives and intention of parties.

The decree of the circuit court must be affirmed with costs.

The other Justices concurred.