## JOHN M. EMMEL v. EDWARD O. ZAPP.[1]

November 18, 1910.

Nos. 16,666—(11).

**Unsuccessful joint enterprise — construction of contract.**

The contract involved in this action provided that the plaintiff should have until the first day of July, 1908, in which to repay Mr. Carter one-half of certain sums of money advanced by him in connection with the purchase of a certain tract of land, and for certain personal property and improvements. In case such payment was made, Carter agreed to deed to plaintiff a one-half interest in the real estate, with the improvements and personal property; that, if the plaintiff was unable to raise the money by the time mentioned, he was to receive from Mr. Carter the sum of $2,495 as complete and full compensation for all services rendered by him in connection with the purchase of the real estate, and as the value of any interest in the real estate claimed by him.

In an action by plaintiff against the executors of Mr. Carter to recover the $2,495, upon the ground that plaintiff had been unable to raise the money to purchase the one-half interest: *Held*, the contract is explicit in its terms and expresses a valid consideration. The amount to be paid by Carter was not in the nature of a penalty, not dependent upon the value of the services rendered by plaintiff, and not dependent upon the successful carrying out of a joint enterprise to open and conduct a stone quarry upon the premises.

Action in the district court for Stearns county against Wesley Carter, to recover $2,495 upon the written contract set out in the opinion. The answer alleged the purchase of the land in question at receiver's sale and that plaintiff, for the purpose of defrauding defendant, falsely agreed that if defendant would purchase the tract of land described, upon which there was known to be a granite quarry, plaintiff would join with defendant in an extensive quarry business, would have at his disposal the necessary capital and would buy an undivided one-half interest in the land and personal property which

[1]Reported in 127 N. W. 1134, 128 N. W. 572.

defendant should buy to be used in the business; that the representations were false and untrue in every particular and known to plaintiff to be untrue, and were part of a conspiracy to recover of defendant a large sum of money; that the contract in question was drafted at the dictation of the plaintiff without consulting with defendant and without defendant having any knowledge of the contents, and was signed by defendant without reading on the day before defendant was leaving to go to New England in order to familiarize himself with the quarry business, and if the contract was read to him defendant did not appreciate the meaning of several provisions therein contained; that he supposed that the provision for the payment to plaintiff was to the effect that if defendant neglected or refused to convey to plaintiff one-half interest, then in that event defendant was to pay the sum named and a penalty for such negligence and refusal; that prior to or at the making of the contract it was never suggested or agreed that defendant was to pay the sum named for services, in connection with the purchase of said quarry; that the clause for the payment of plaintiff was inserted either by the mutual mistake of plaintiff and defendant, or by the fraudulent conduct of plaintiff and the mistake of defendant, and the contract did not embody the true intention of the parties; that defendant never supposed, nor did plaintiff suppose, that defendant was giving plaintiff an option to purchase one-half interest in the land and agreeing to give plaintiff a bonus of $2,495, if he failed to exercise the option. The reply alleged that in the presence of plaintiff and defendant the attorney mentioned in the answer dictated to his stenographer an agreement, who thereupon reproduced the same with the typewriter and the agreement was read by the attorney to plaintiff and defendant, and the same was thereupon assented to and signed by plaintiff and defendant; that plaintiff and defendant understood the same in exactly the same way and in exact accordance with the contents; and the reply denied that plaintiff at any time made to defendant the false or fraudulent representations alleged in the answer.

Defendant having died, his executor, Edward O. Zapp, was substituted in his place as defendant.

The case was tried before Taylor, J., who made findings of fact

and as conclusions of law ordered judgment in favor of plaintiff. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*Reynolds & Roeser,* for appellant.

*Stewart & Brower,* for respondent.

On August 2, 1910, the following order was filed:

PER CURIAM.

This cause having been submitted upon briefs, and the court being in doubt as to the proper disposition thereof, it is ordered that the questions presented by the record, particularly the question whether the transaction involved in the action was in substance and effect a joint adventure or joint enterprise, and whether the failure thereof, which is conceded, operated to release both parties from further obligations under the contract, save to share equally in all losses, be argued orally, and by such further printed briefs as may be deemed proper, on the third day of the next October term.

On November 18, 1910, the following opinion was filed:

LEWIS, J.

Mr. Carter, in his lifetime, and the plaintiff, entered into the following agreement:

"This agreement, made and entered into this sixteenth day of January, 1908, by and between Wesley Carter and John M. Emmel, both of the city of St. Cloud, Stearns county, Minnesota, witnesseth:

"That whereas the said Wesley Carter has heretofore purchased and now has title of record in his own name to the south half of the southwest quarter (S $\frac{1}{2}$ S W $\frac{1}{4}$) of section twenty (20), township one hundred twenty-four (124), range twenty-eight (28), Stearns county, Minnesota, and has paid all of the consideration therefor; and whereas there is situate upon said tract of land a quarry which it is the purpose and intention of said Wesley Carter to develop; and whereas said Carter, in the expectation of developing said quarry,

has expended certain moneys for improvements thereon, and has purchased and acquired horses, wagons and other personal property for said purpose, and intends hereafter to expend moneys in connection with said purpose; and whereas the said John M. Emmel was instrumental in assisting said Carter to acquire said real estate by purchase, but did not invest any money therein:

"Now, therefore, it is agreed between said parties that said John M. Emmel shall have until the first day of July, 1908, in which to advance and repay to said Carter one-half of the sums of money heretofore advanced by him in connection with the purchase of said land and in connection with said personal property and improvements aforesaid, whether already advanced and expended by said Carter or to be hereafter advanced and expended by him, and upon the payment of said one-half of said moneys by said Emmel he is to receive from said Carter a complete one-half interest in said real estate and all improvements thereon and in all personal property so purchased by said Carter as aforesaid. Said Carter, however, is to be allowed interest at the rate of six (6) per cent. in computing said amount from the time when said moneys were advanced.

"In the event that said Emmel is unable to raise the necessary money required as aforesaid on or before July 1, 1908, he, in that event, is to receive from said Carter the sum of two thousand four hundred ninety-five ($2,495) dollars as complete and full compensation to him for all services rendered by him in connection with the purchase of said real estate, and as the value of any interest in said real estate claimed by him. Upon payment of said sum so agreed upon by said Carter to said Emmel, said Emmel is to surrender and release any and all interest claimed by him in said premises aforesaid.

"In regard to the personal property aforesaid, it is understood that said Emmel, in estimating the amount he is to pay, shall only be charged with one-half the cost of whatever personal property is in Carter's possession and used in connection with said land at the time when said Emmel makes his payment, if he does make it.

"In testimony whereof, both parties have hereunto set their hands and seals this sixteenth day of January, 1908.

[Signed]                                        "Wesley Carter

"John M. Emmel."

After Mr. Carter's death this action was brought by plaintiff against his executor to recover the $2,495 specified in the agreement; he claiming that he was unable to purchase the one-half interest. The trial court found that the plaintiff and Mr. Carter both understood the contract in exactly the same way, and in exact accordance with the covenants of the agreement; that there was a large deposit of granite upon the land, and that at the time of making the purchase, and at the time of the execution of the contract, Carter believed that the land contained a valuable granite quarry. But the court found that said deposit of granite was of such a character and so broken by seams that it was of little or no value as a granite quarry, and that the land was of no greater value than the sum paid therefor. Judgment was ordered for plaintiff for the amount. Defendant appealed from an order denying his motion for a new trial.

Appellant presented a most persuasive argument that, when the contract is considered in the light of the evidence, it conclusively appears that the minds of the parties never met; that there was a failure of consideration, and that the only reasonable interpretation of the contract is that the parties understood that they were engaged in a joint enterprise to open and conduct a granite quarry; that whereas the plaintiff had the right to purchase a one-half interest by paying one-half of the purchase price advanced by Mr. Carter, yet if he did not do so he could only recover the $2,495, in the event that the enterprise was carried out and an actual granite quarry opened up of sufficient value to pay the amount. It has also been argued that the payment of the $2,495 is in the nature of a penalty, and not as liquidated damages; also that plaintiff could not recover without proof of the reasonable value of his services; and, further, that the payment of such an amount to the plaintiff for such services as he rendered was so grossly excessive and unconscionable as to be unsustainable in a court of law or equity.

We have carefully considered all these objections, and are of

opinion that they are without merit, and that such result becomes apparent upon a careful reading and consideration of the contract.

According to the evidence, it is unquestionable that up to the time of the execution of the contract, January 16, 1908, plaintiff and Mr. Carter were engaged in a joint enterprise. Mr. Carter was to furnish the money, and plaintiff was to negotiate the purchase of the land. How much money the plaintiff was expected to put into the business, or in what manner the business was to be conducted, does not appear; but, whatever the preliminary talk or agreement may have been, it became merged in the writing.

The contract is plain and unambiguous, and speaks for itself. Carter purchased the eighty acres of land, paid all the money therefor, and received the title in his own name. He had expended other money in the expectation of developing the quarry, and had made some improvements thereon, and had purchased horses, wagons, and other personal property, and intended to expend more money in connection with the purchase. Plaintiff assisted Carter in acquiring title to the property, but did not invest any of his own money therein. These facts are expressly set out as preliminary to the covenants of each. Although not as clearly expressed as it might have been, it is plain that the mutual agreements were entered into for the purpose of determining in a positive manner the interests which the parties had in the land and in the prospective business of running a stone quarry. Therefore the plaintiff was given until the first of May, 1908, in which to repay Carter one-half of all the sums of money already advanced by him in connection with the purchase and the improvements and personal property, or to be advanced from that time until plaintiff made the purchase; Mr. Carter to be allowed six per cent. interest on the amount he had advanced. Then comes the second provision that, if the plaintiff was unable to raise the necessary money to pay Carter for one-half of what he had advanced, then Carter was to pay him $2,495 as a complete and full compensation, not only for all the services rendered in connection with the purchase, but also for the interest in the real estate which the plaintiff claimed to have, and upon payment of that amount plaintiff agreed to release and surrender all interest which he had in the property.

According to the complaint and findings, plaintiff was unable to raise the necessary money with which to repay Mr. Carter, and notified him, on or about the first of July, 1908, that he did not care to proceed further with the enterprise, and demanded the payment of the sum of $2,495. Whether plaintiff had a mere option to purchase, or whether he could have been compelled to purchase the half interest, had he been able, are questions not involved at this time. It was assumed all through the trial, and so found by the court, that the plaintiff was unable to pay, and that he demanded payment by Carter. According to the findings, the plaintiff had no knowledge other than Carter had of the condition of the quarry, or its value at the time of the execution of the contract; but Carter believed it was of the value of $20,000. There was no fraud shown. It was apparent that the consideration which Carter agreed to give was in his opinion not unconscionable nor excessive, but an amount which he was anxious and willing to give for the purpose of acquiring the entire interest. While true, according to subsequent events, it turned out that the value of the land was not enhanced by reason of the presence of the granite, yet at the time of the execution of the contract both parties proceeded upon the supposition that it was of great value, and dealt with each other upon that basis, and because it subsequently turned out that the property was not of the value contemplated is no reason for changing a contract which the parties deliberately made.

Affirmed.

Brown, J. (dissenting).

I dissent. As stated in the opinion, "it is unquestionable that up to the time of the execution of the contract, January 16, 1908, plaintiff and Mr. Carter were engaged in a joint enterprise. Mr. Carter was to furnish the money, and plaintiff was to negotiate the purchase of the land." In other words, the parties intended to form a copartnership or a corporation to develop and operate a stone quarry upon the land purchased. Plaintiff's services—he furnished no money—were all rendered in furtherance of that project, and were performed before the written contract was entered into. In my opinion plaintiff was not entitled to compensation for these

services, any more than Carter would be entitled to interest from plaintiff upon the money advanced to pay for the land, and there was therefore no consideration for the contract, construed as a personal obligation on the part of Carter. Hopkins v. Ruggles, 51 Mich. 474, 16 N. W. 862; Wilson v. Anthony, 19 Ark. 16; Hart v. McDonald, 52 La. An. 1686, 28 South. 169; 30 Cyc. 448.

But the contract should not be construed as a personal obligation of Carter to pay plaintiff the amount stipulated. The parties were engaged in a joint enterprise. Plaintiff rendered services of some value. Carter paid $1,910 for the land, its full value. The enterprise was a total failure. The land was not suitable for the purposes intended, and plaintiff should, in equity and good conscience, be limited in his recovery to a half interest in the property, and not be accorded a personal judgment against Carter. The parties were grossly mistaken in the character of the land, and their enterprise wholly failed. Gribben v. Atkinson, 64 Mich. 651, 31 N. W. 570; Miles v. Stevens, 3 Pa. St. 21, 45 Am. Dec. 621; Bedell v. Wilder, 65 Vt. 406, 26 Atl. 589, 36 Am. St. 871; Bluestone v. Bell, 38 W. Va. 297, 18 S. E. 493. Each was therefore released from all personal obligations imposed by the contract.

O'BRIEN, J.

I agree with Mr. Justice BROWN that in any event plaintiff's recovery should be limited to one-half the value of the land.