## Crutchfield v. Robinson, et al.

(Decided March 27, 1925.)

Appeal from Scott Circuit Court.

1. Joint Adventures—Partnership—No Recovery for Services Rendered by One of Parties from those Interested with Him in Venture.—Whether transaction to acquire oil lease constituted a partnership, or joint adventure, one of parties, in absence of a contract, could not recover for his services from those interested with him in venture.

2. Partnership—Partner Held to have Burden of Accounting for Money Intrusted Him by Associates.—In action for accounting for difference between amount turned over to partner by partnership for purchase of oil lease and amount paid by him therefor, partner had burden of accounting for money intrusted to him by his associates.

3. Partnership—Partner Held Not to have Sustained Burden of Accounting for Money Intrusted to Him by Associates.—In action for accounting for difference between amount turned over to partner by partnership for purchase of oil lease, and amount paid by partner therefor, partner held not to have sustained burden of showing whole amount intrusted to him by his associates was paid for the lease.

O'REAR, FOWLER & WALLACE and L. F. SINCLAIR for appellant.

BRADLEY & BRADLEY for appellees.

Opinion of the Court by Commissioner Sandidge— Affirming.

About the first of April, 1920, the six appellees, B. G. Robinson and others, and appellant, P. H. Crutchfield, embarked in the oil business. The seven of them executed their joint note for $7,500.00, which was discounted at the Georgetown National Bank, of Georgetown, Kentucky, with which to pay for a 30-acre lease in Warren county, Kentucky. The lease was purchased from Charles B. McGuire and appellant Crutchfield appears to have represented himself and his associates in the deal. The lease was taken to him as trustee, and he subsequently conveyed to each of his associates a one-seventh interest in it. Additional money was raised with which to develop the lease and wells were drilled thereon. No oil was found. After the venture proved a failure, appellees brought this equitable action for a settlement of the affairs of the partnership, suing appellant and charging that, although he represented to them when the $7,500.00 note was executed that he had an option on the lease at that figure and subsequently reported to them that he paid $7,500.00 for it, as a matter of fact he paid only $3,700.00 for it; and they sought to have him account to them for the difference. Appellant denied having paid only $3,700.00 for the lease, and claimed to have paid $7,500.00 for it; and by way of counterclaim sought to recover from appellees certain money which he had advanced to the partnership in the development of the lease and pay for services rendered. His counterclaim was traversed by reply. It was stipulated that the partnership had no assets except the lease, proved worthless, and that nothing was in controversy save the controversy between the parties themselves. Upon the trial of the case the chancellor found that the partnership had turned over to appellant $7,500.00 with which to pay for the lease, but that he had paid for it only $3,800.00, and adjudged that he account to the partnership for the difference ($3,700.00) with interest. It was found further that Crutchfield had advanced to the partnership, in the development of the lease $1,123.87, and he was awarded a judgment therefor with interest. The court dismissed appellant's counterclaim for services, allowing him nothing therefor. Appellant prosecutes the appeal from that judgment. Appellees make no question as to the correctness of the finding by the chancellor that ap-

pellant had advanced $1,123.87 to the partnership in the development of the lease and that question is eliminated.

It is insisted for appellant that the chancellor erred in finding that he paid only $3,800.00 for the lease and in refusing his claim for services. On the latter question appellant insists that he should have been allowed the reasonable value of the services rendered by him. The evidence discloses without contradiction that no contract was made by the parties by which it was agreed that appellant should be paid for his services. Appellant concedes that with reference to partnerships the rule is that one partner cannot collect for services from the partnership in the absence of a contract. Appellant insists, however, that the undertaking here involved was not a partnership but that it was merely the "joint adventure" of the parties. If we should agree with him the rule is the same. It was said by this court, in Central Trust Company of Owensboro v. Creel, 184 Ky. 114:

> "It would seem that under the modern rule the undertaking was not a technical partnership but a joint adventure, which, though not identical with a partnership, is of a similar nature and is covered by the same rules of law."

In a joint adventure, one of the parties, in the absence of a contract, can not recover for his services from those interested with him in the venture. Hence the chancellor properly dismissed appellant's counterclaim for services.

On the question as to whether appellant paid $7,-500.00 for the lease or only $3,800.00, as found by the chancellor, we conclude that the evidence sustains the finding of the chancellor. It is admitted that the note for $7,500.00 was executed by the parties to raise the funds to purchase the lease. Appellant alone acted for himself and his associates in the purchase of the lease. It was purchased from Charles B. McGuire. Appellant testified that he paid $7,500.00 for it. McGuire testified that he was paid only $3,800.00 for it. McGuire is a resident of Warren county, Kentucky. The appellant and appellees are all residents of Scott county, Kentucky. None of the appellees took any part in the negotiation for the purchase of the lease, and none of them appears ever to have seen or known McGuire until after the lease was purchased. Instead of depositing the proceeds of the $7,500.00 note to his own credit or to the credit of himself

as trustee or treasurer for his associates, it appears that when the note was discounted its proceeds were deposited to the credit of one E. Bryant Crump. $3,700.00 of the purchase price of the lease was paid to McGuire by the personal check of appellant Crutchfield. He testified that at the same time he delivered the check he paid to McGuire $3,300.00 in cash, and that the balance was paid by his checks made payable to E. Bryant Crump, who was present. He testified that the checks were made to Crump pursuant to the direction of McGuire. McGuire denied that appellant paid him $3,300.00 in cash or that any checks were made payable to Crump at his direction in part payment for the lease. He testified that the $3,-700.00 check given to him by appellant and $100.00 paid to him by Crump was the entire purchase price of the lease. McGuire testified that on one occasion, in Louisville, appellant, in company with McGuire's brother, an attorney, approached him and undertook to have him sign an affidavit reciting that he had received more for the lease in question than he did receive, but that he refused to do so because the affidavit did not state the facts. He testified further that on another occasion, in Bowling Green, appellant, in company with another attorney, undertook to talk to him about the matter and that he declined to talk to them, and notified them that he would not tell anything but the truth about the amount he received for the lease. Appellant could give no satisfactory explanation as to why the proceeds of the $7,500.00 note were deposited to the credit of E. Bryant Crump instead of to his own credit. He testified twice in the case and his testimony is exceedingly contradictory. His second deposition was necessary because the testimony for appellees by bank officials and the records of the banks contradicted all his original testimony in explanation of how he handled the $7,500.00 of the partnership. As stated, the $7,500.00 was deposited to the credit of Crump. He checked it out in various sums and amounts. Part of it went to Crump's credit in one of the Louisville banks. Thence part of it went to the credit of appellant in one of the Lexington banks, something over $6,000.00 of it. The $3,700.00 check given in payment of the lease was drawn by appellant on the latter bank. He claims to have taken the $3,300.00 in currency from his home to Bowling Green in a pocketbook. To make the bulk as small as possible, he testified that the bills were twenties and fifties, yet he testified that some $1,400.00 of it was money

.that he had in his office safe that had been paid him by his patients from time to time and some $1,800.00 of it the proceeds of a note that Mr. Williams paid him in cash. Appellant did not take the testimony of Mr. Crump, and the evidence discloses that appellees made some three or four unsuccesssful efforts to do so. On the first occasion Mr. Crump, pursuant to the summons, was present, but for an unexplainable reason was represented by counsel and on advice of counsel declined to testify. On the second occasion, though present and though his counsel consented that he testify, after a conference with appellant he declined to do so. Twice subsequently he was summoned to give his deposition but was not present at the time and place.

Under the circumstances of this case, the burden was upon appellant to account for the money entrusted to him by his associates. This he clearly failed to do. The judgment of the chancellor is abundantly sustained by the evidence, and is, therefore, affirmed.