## Humphrey, et al. v. McClain, et al.

(Decided March 25, 1927.)

### Appeal from Allen Circuit Court.

1. Joint Adventures.—Unless contract so provides, no member of joint adventure is entitled to compensation for services rendered by him toward common enterprise.

2. Mines and Minerals.—Shareholder in corporation owning oil lease held not entitled to recover compensation from other shareholders for his services in obtaining transfer of property to him as trustee for shareholders, who were not incorporated, but merely joint adventurers.

3. Trusts.—A trustee is entitled to reasonable compensation, where there is no contract as to what he shall receive.

4. Trusts.—Trustee should receive compensation adequate to his care and trouble, and proportioned to responsibility incurred and labor and care bestowed.

5. Trusts..—That trustee made property much more valuable than before its transfer to him, and brought into trust a large sum of money, should be considered in determining his compensation.

6. Trusts.—In determining trustee's compensation for services rendered, usual price paid for such services, or amount reasonably within parties' contemplation when trust was created, may be considered.

7. Trusts.—Trustee taking oil lease of no market value from corporation, holding it under agreement, not changed in contract with him, to retain for its services 10 per cent. of net amount realized from oil, and subsequently turning over to receiver a property worth $75,000 in consequence of his skill and diligence, but not sold by receiver for such price, held not entitled to full 10 per cent. thereof as compensation for services, but to $5,000 as reasonable compensation for his services.

F. R. & N. G. GOAD and WILSON, HAHN, HENDERSON & WILSON for appellants.

W. D. GILLIAM and MORRIS & JONES for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming as to Stuart, reversing as to McClain.

Previous to the year 1924 the Van Every, Horning
& Company, a Delaware corporation, owned an oil lease
in Allen county, known as the Frost lease, and proposed
to sell a 1/75 interest in the lease to anyone who would
pay a hundred dollars. In this way it sold sixty and one-
half 1/75 interests for one hundred dollars each to dif-
ferent parties. By the terms of the agreement the pur-
chasers were to furnish the money necessary for the
development of the lease and, out of the proceeds of any
sale of oil produced, the company was to receive 10%,
and it was to manage, control and operate the develop-
ment of the lease. It made a number of assessments on
the shareholders and twelve or thirteen wells were put
down, but none of these were doing much in the way of
producing oil. Another assessment was made. The
shareholders were dissatisfied and did not pay. A dis-
pute followed. This went on for several months, and,
finally, in August, 1924, the company, by the consent of
the shareholders, conveyed the Frost lease to Robert A.
McClain as trustee for the other shareholders, in con-
sideration that the shareholders released it from all obli-
gation under its contract with them. The written con-
sent of the shareholders contained no provision as to
what the trustee was to receive for his services. The
paper simply appointed him as trustee to receive the
property and added these words: "We further constitute
and appoint the said R. A. McClain our agent and trus-
tee to hold the said lease and leaseholds so assigned, con-
veyed and transferred, in trust for us and for our uses
and purposes." After the transfer McClain, as trustee,
took charge. The company had had a man named Poyn-
ter on the ground as manager of the drilling operations.
The trustee made an assessment upon the shareholders;
employed Poynter and had him to dig the wells deeper.
This resulted in striking oil. He then put down some
additional wells, striking oil. Thus things ran along
until the following spring, when at a meeting of the share-
holders McClain presented a claim for services as trus-
tee. They did not agree upon what he was to receive and
thereupon he brought this suit on March 25, 1925. At
the time he brought the suit he had sold oil amounting to
something over $11,000.00, and he had paid expenses and
other charges and had distributed to the shareholders

something over $4,000.00. He was the largest shareholder. He alleged in his petition, in substance, that the company had practically abandoned the lease and was doing nothing with it; that he was instrumental in getting the lease turned over to the shareholders; that he procured this by his own exertions, and that by his skill and management he had made the property, which then had no market value, have a property value of $75,000.00. He prayed an allowance for his services in the sum of $9,500.00, and that the property be placed in the hands of a receiver. The receiver was appointed and took charge. He filed his report on January 21, 1926, and at that time oil of the value of $30,000.00 had been produced. McClain's claim for $9,500.00 was allowed by the commissioner. The circuit court reduced his claim to $7,500.00. A. O. Stuart also filed a claim for $700.00 for services as secretary and treasurer. This also was allowed by the commissioner, but was reduced by the court to $500.00. The shareholders appeal.

The proof by McClain and Stuart is in effect that McClain brought about the conveyance of the lease to him as trustee for the shareholders by his efforts, and that McClain employed Stuart as treasurer and bookkeeper, and that the amounts claimed by McClain and Stuart are reasonable. McClain was statistical clerk on the payroll of the Pennsylvania Railroad Company, with headquarters in Youngstown, Ohio. He was also on payroll as half clerk and chairman of the clerks' committee in the employees' management of the railroad. He made trips to Allen county, Kentucky, nearly every month. He would leave home on Friday evening, spending Saturday and Sunday upon the property and return home for work Monday morning. All his expenses for these trips were charged to the trust and paid by the trust. Stuart kept the books, received and paid out the money. Poynter, who was an oil man of years' experience, put down the wells and managed the local operations on the ground. Poynter and the men under him were paid the usual salary. When McClain would be there he and Poynter would go over the situation together and he would tell Poynter what to do after getting Poynter's views about things. McClain was without any experience in oil matters. The course which they followed was suggested by Poynter and its success was the result largely of his good judgment. According to McClain he had little or no assistance from the shareholders in the

dispute leading up to the transfer of the lease to him as trustee, which went along from spring until August, but, according to the proof for the other shareholders, a number of them took an active interest. One of them came with McClain down to the lease to look at it to learn what ought to be done, and others of them cooperated with him in more than one way. They all testify that $50.00 a month was a reasonable compensation to McClain for his services. They also testify that the work that Stuart did did not interfere with his other work. He held the same position he had always held in the First National Bank of Youngstown, Ohio, and they insist that he have no pay, for he was one of the shareholders.

The first law question presented is whether McClain can demand compensation for his services in procuring the property to be transferred by the oil company to him as trustee for the shareholders. He was one of the shareholders and the largest shareholder. The shareholders were not incorporated. It was simply a joint adventure, unincorporated, in which all of the shareholders were jointly interested. There was no contract to pay him for his services in procuring the transfer of the property to him as trustee. In 33 C. J. 860, the rule on the subject is thus stated:

"Unless the contract so provides, no member of a joint adventure is entitled to any compensation for services rendered by him toward the common enterprise."

To the same effect see 15 R. C. L. 500; 20 R. C. L. 877.

In Central Trust Company v. Creel, 184 Ky. 114, and Crutchfield v. Robinson, 208 Ky. 178, this court so held. In the last case it thus stated the rule:

"In a joint adventure, one of the parties, in the absence of a contract, can not recover for his services from those interested with him in the venture."

We therefore conclude that McClain is not entitled to compensation for his services in obtaining the transfer of the property to him as trustee. Ford v. Jellico Grocery Co., 194 Ky. 552, did not involve this question.

It remains to determine what compensation McClain should have for his services as trustee. A trustee is entitled to a reasonable compensation where there is no con-

tract as to what he shall receive. The rule on this subject is thus stated in 26 R. C. L., p. 1391:

> "It is now the prevailing rule in the United States, established either by express statutes or by the decisions of the courts, that trustees are entitled to a reasonable and just compensation for their services. It is found in practice that in this as in other human transactions, the best way to secure honest service is to give honest pay."

The rule for determining the amount to be allowed is this:

> "The question of what is a reasonable compensation for trustees depends largely on the circumstances of each particular case, and can not be properly determined by any inflexible rule. While in practice it is usually claimed and awarded in the form of a commission, the rate is not usually determined by any established rule. The general rule running through all of the cases is that a trustee should receive a compensation adequate to his care and trouble. Such compensation is proportioned to responsibility incurred and to the labor and care bestowed."

The fact that the trustee made the property much more valuable than it was before and brought into the trust a large sum of money should be taken in consideration, for if the result of his operations had been otherwise, this fact would be considered on the behalf of the owners of the trust property. The usual price paid for such services or what was reasonably within the contemplation of the parties when the trust was created may also be considered. This property had been in the hands of the oil company under an agreement that it was to retain for its services ten per cent of the amount realized from the oil after paying the royalty and operating expenses. The other owners when they put in the trustee knew of this contract rate and making no change in the contract with him may fairly be assumed to have then regarded this a reasonable charge. This is confirmed by their conduct when they met to fix his compensation, for they then agreed that he should have ten per cent *as long as he remained trustee.* The words underscored were added by them to the resolution offered by him with a view to a removal of him as trustee. This they had no

right to do under the deed, unless he was unfaithful. So he rejected this offer and this litigation followed.

He took a property that had no market value when he took it and he turned over to the receiver a property worth $75,000.00. This he brought about by his skill and diligence in managing the property. The receiver had collected at the time of the trial over $30,000.00. If the property had been sold for $75,000.00 when it was turned over to the receiver, under their own resolution he would have been entitled to ten per cent thereof, or $7,500.00, for all they had was the oil rights, and the $75,000.00 would be the proceeds of the sale of the oil.

But the property was not sold for this price. Such a sale, if made by him, would entitle him to more compensation than he is entitled to when he made no sale, for the work that he as trustee was to do must now be done by others and they must be paid. He is not entitled, therefore, on this basis to the full $7,500.00; but to render the property productive was the first work he was to do as trustee and the most important thing for the owners. This he had done and this fact must be considered in fixing his compensation, for under the management of the oil company the property was producing nothing. Under all the facts and considering all the circumstances without setting them out here, the court concludes that five thousand ($5.000.00) dollars is a reasonable compensation to him on the whole case for his services. The allowance to Stuart by the court below, considering the amount of money he received and disbursed and all he did, was reasonable.

The trustee had the power to employ him.

The judgment as to Stuart is affirmed. The judgment as to McClain is reversed and the cause is remanded for a judgment as above indicated.