CARMEL BALZANO ET AL. *v.* ROSE BALZANO

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND CORNELL, Js.

Argued February 2—decided June 21, 1949.

*Robert J. Woodruff,* for the appellants-appellees (plaintiffs).

*Max H. Schwartz,* with whom, on the brief, was *J. Stephen Knight,* for the appellant-appellee (defendant).

BROWN, J. The plaintiffs Alphonse Balzano and his daughter Carmel brought this action against the defendant Rose, his older daughter. The complaint

alleges that since 1935 Carmel has turned over her wages to Rose under an agreeent that their combined earnings would be pooled in a common fund and saved for the joint purchase of a home, and that, pursuant to their agreement with Alphonse that he would obtain an interest in the property, he paid all of the household expenses. The complaint goes on to allege that on July 14, 1944, a property was purchased as agreed and title taken in the name of Rose alone, $3200 being paid from the common fund and $800 by Alphonse, and that thereafter the defendant refused to recognize the plaintiffs' ownership and to account for income realized from her use of the premises as a rooming house. Each plaintiff claimed an accounting, that a resulting trust for his proportionate share in the real estate be decreed, that a transfer by deed of such interest be ordered, and damages. The court rendered judgment determining the share of the property and of the income to which each party is entitled and ordered a sale and the distribution of the proceeds accordingly. Both the plaintiffs and defendant have appealed.

We summarize the material facts in the court's finding, which cannot be corrected to the advantage of either party. Prior to 1944 the Balzano family occupied various rents in New Haven. Alphonse's wife died in 1927. Their daughter Rose was then seventeen years of age and Carmel eight. From the time of her mother's death Rose mothered the family and took care of the work and management of the household. She also worked during the greater part of the time up to July, 1944, in various factories and took in some sewing. Her total earnings during the period exceeded $13,000. As a result of hard work and frugal habits, by 1944 she had accumulated total savings of $4200 after paying all of the household expenses during cer-

tain periods and her fair share for the rest of the time. Alphonse worked and contributed to the household expenses when able, but for several years was incapacitated by an injury. From 1941 until 1944 the household expenses were paid by Rose with money received from him and from Carmel and with money out of her own earnings. From 1937 to July, 1944, Carmel had various employments and earned a total of approximately $4000. She made regular payments to the defendant as her contribution to the expense of running the house and retained the rest of her wages for her own use. Of the amounts so received from Carmel, the defendant by July, 1944, had a total of $300 left after expenditures made therefrom for running the house and for Carmel's individual benefit.

In the spring of 1944 the plaintiffs and the defendant agreed that they would all contribute toward buying a home at 660 George Street, New Haven, for $8000. On July 14, 1944, this price was paid for the property by the defendant. She procured $4000 of it by a mortgage, and, as had been agreed, her own savings of $3200, Alphonse's of $500, and Carmel's of $300 provided the balance. Sometime before this, certain land belonging to Alphonse had been attached, and, at the defendant's suggestion that he would be liable to get into trouble if title to the property were taken in his name, it was deeded to her as sole grantee. The court expressly declined to find, however, that the purpose of Alphonse in agreeing to this was to hinder or defraud his creditors. There was no agreement between Alphonse, Carmel and the defendant that each was to be the owner of an undivided one-third interest in the property, but at that time each agreed to make a contribution to the purchase price in the amount stated above.

After the purchase of the house the defendant took

possession and has since conducted it as a rooming house. The plaintiffs have occupied rooms there and until January, 1945, contributed for food and other things mutually enjoyed by the parties. The defendant has done practically all of the work to keep the rooming house going and has paid $3000 in reduction of the mortgage, $2000 out of the profits and $1000 from her own money. The income received by the defendant to July, 1947, totaled $6163.75, and the expenditures, including the $2000 paid in reduction of the mortgage, $5245.60. An auditor appointed by the court found that the defendant should receive a credit of $1501.50 as the reasonable value of the work she did in conducting the rooming house. This the court disallowed. The amount of profits for which the defendant is responsible is $918.15.

The court concluded: A resulting trust should be impressed on the property pro tanto so that Alphonse shall be entitled to a 500/4000ths and Carmel to a 300/4000ths interest therein; the defendant is indebted to Alphonse in the amount of $114.77 for his 500/4000ths interest in the net profits of $918.15, and to Carmel in the amount of $68.86 for her 300/4000ths interest; a sale of the realty should be had; and the net proceeds of such sale, after $1000 is paid to the defendant for the money expended by her in reduction of the mortgage, should be allocated to the parties in accordance with their proportional interests as stated above.

Upon the plaintiffs' appeal their principal claim is that each of them is entitled to an undivided one-third interest in the property and to receive one-third of the net profits from the rooming house. This is based on the contention that they and the defendant were participants in a joint adventure which their claimed corrections in the finding suggest began at least as

early as 1941 and their complaint alleges started in 1935. The court's finding is conclusive that there was no such joint adventure but that the interest of Carmel and Alphonse in the property was limited to their respective contributions of $300 and $500, agreed upon when the purchase was made. The court was therefore correct in concluding that the transaction gave rise to a resulting trust; *Samasko* v. *Davis,* 135 Conn. 377, 381, 64 A. 2d 682; *Ward* v. *Ward,* 59 Conn. 188, 195, 22 A. 149; and that the interest of each plaintiff thereunder is in proportion to the amount of his contribution. *Fox* v. *Shanley,* 94 Conn. 350, 359, 109 A. 249. It follows that, as the court further concluded, each of the plaintiffs is entitled to his proportional part only of the net profits. However, the auditor found that included in the $6163.75 income from the rooming house was $82.50 paid to the defendant by Alphonse and $351 by Carmel as rent. The plaintiffs contend that they were not really boarders and that these sums were to be added to their contributions, possibly used to reduce the mortgage. The auditor's finding to the contrary is controlling, however, unless there was error in the court's overruling of their remonstrance to it. This ruling could only be attacked on the basis of the evidence which was before the auditor. Since this evidence is not contained in the record upon this appeal, the court's ruling cannot be disturbed and the auditor's finding stands. See *Bowen* v. *Morgillo,* 128 Conn. 442, 448, 23 A. 2d 719.

The final claim of the plaintiffs is that the court erred in ordering a sale of the property, because this was not warranted upon the pleadings and because the court failed to find that the sale will better promote the interests of the owners, as is essential in an action for a sale under § 5927 of the General Statutes, Rev. 1930 (Rev. 1949, § 8236), which provides that "Any

court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any estate, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners." While the legal title was in the defendant and the plaintiffs had only an equitable title, the parties are joint owners within the meaning of the statute. *Kelley* v. *Madden,* 40 Conn. 274, 280. The plaintiff's complaint alleges facts affording the basis for an equitable title in each of them to a share of the property and indicating that title to the balance was in the defendant. Their requests for relief conclude with a general prayer for "such other relief as to equity may appertain." Such a general prayer may be sufficient to warrant the court in ordering a sale. *Cottrell* v. *Cottrell,* 106 Conn. 411, 420, 138 A. 458; *Chiarelli* v. *Pentino,* 100 Conn. 686, 689, 124 A. 806. While the broad principle may not be applied where the granting of specific relief under a general prayer requires a finding of facts not in issue and as to which no evidence has been offered, that was not the situation presented to the trial court in this case. It filed a preliminary memorandum of decision in which it made clear to the parties that it was considering a judgment directing a sale of the property. Had any of them embraced the opportunity so afforded of informing the court that they wanted to be heard or to offer further evidence upon that issue, it is not to be assumed that such request would have been denied. No such request was made. Under these circumstances, this case falls within the principle stated in the *Cottrell* case, supra, that "Any relief can be granted under the general prayer which is consistent with the case stated in the complaint and is supported by the proof 'provided the defendant will not be surprised or prejudiced thereby.' " See *Fine* v.

*Moomjian,* 114 Conn. 226, 230, 158 A. 241. The court's conclusion that a sale "is desirable to forestall inevitable future litigation in an action of partition" is adequate upon the facts to show that this course will better promote the interests of the owners, thus satisfying the statute. *Potter* v. *Munson,* 40 Conn. 473, 474; *Kaiser* v. *Second National Bank of New Haven,* 123 Conn. 248, 256, 193 A. 761. The court did not err in ordering a sale of the property.

The defendant upon her appeal claims that the court should have held Alphonse precluded from recovery for lack of clean hands because his purpose in having title taken in her name was to defraud his creditors. *Gest* v. *Gest,* 117 Conn. 289, 296, 167 A. 909; *Samasko* v. *Davis,* 135 Conn. 377, 383, 64 A. 2d 682. The court not only specifically refused so to find but declined to adopt the paragraphs of the defendant's draft finding to this effect. It was justified in this course, and no attack was made on its finding that the defendant was named as sole grantee at the suggestion of the defendant that Alphonse would be liable to get into trouble if title were taken in his name. The evidence showed that the attachment of Alphonse's other property to which Rose referred in suggesting that title be taken in her name had been made more than ten years earlier and that the amount of the judgment in the case was $200. The value of the land attached does not appear, nor does the record show whether the judgment had been satisfied. Whether it was an intent to defraud his creditors or some other reason which seemed to Alphonse sufficient to warrant his acquiescence at the time was for the court to decide.

The defendant's remaining claim is that the court erred in disallowing a credit to her of $1501.50 which the auditor found to be due her as the reasonable value of her work in conducting the rooming house. As we

have stated, the purchase of the house gave rise to a resulting trust. Had there been an express trust pursuant to which the defendant as trustee had conducted the rooming house for the benefit of the plaintiffs, she might well have been entitled to the allowance of the credit claimed. *Bissell* v. *Butterworth,* 97 Conn. 605, 615, 118 A. 50; *Hayward* v. *Plant,* 98 Conn. 374, 384, 119 A. 341. Not only was the defendant not an express trustee but she denied that the plaintiffs had any rights in the house and refused to account; and, while it is not specifically found, it is evident that she conducted it as her own property. Under these circumstances, there were sufficient equitable considerations to warrant the court's denial of her claimed credit for services, solely supported as that was by the terse finding of the auditor. *Baird* v. *Lane,* 115 Neb. 412, 419, 213 N. W. 512; see *Staples* v. *Pearson,* 230 Ala. 62, 66, 159 So. 488. This conclusion is in accord with that reached in decisions dealing with analogous situations where there was no agreement for compensation. Thus, in the case of tenants in common, ordinarily compensation to the tenant managing the property is not allowed. *Redfield* v. *Gleason,* 61 Vt. 220, 229, 17 A. 1075; 14 Am. Jur. 98. A like rule applies in partnerships and joint adventures. *Estate of Week,* 204 Wis. 178, 181, 235 N. W. 448; *Langdon* v. *Kennedy,* 118 Neb. 290, 294, 224 N. W. 292; *Humphrey* v. *McClain,* 219 Ky. 180, 183, 292 S. W. 794; *Hopkins Mfg. Co.* v. *Ruggles,* 51 Mich. 474, 478, 16 N. W. 862; 48 C. J. S. 836, § 9; 30 Am. Jur. 705.

There is no error on either appeal.

In this opinion the other judges concurred.