[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case concerns the interests of the plaintiff Thomas Kelley (Kelley) and the defendant Nasef Abraham (Abraham) in a large parcel of land in Goshen, formerly owned by Abraham's father.
In 1968, after the death of his father, Abraham arranged to borrow money from Kelley to purchase from his brothers and sisters their interests in the property. Both Kelley and Abraham contributed equally to the required deposit. Kelley cosigned with Abraham a mortgage note for the balance of some $82,600.00.
Over twenty years Kelley paid off that obligation as well as almost all the taxes and all insurance costs and some repairs to the property where Abraham lived rent free and operated a farm.
During that same period, Abraham worked extensively for Kelley, sometimes without receiving wages, at Kelley's Farm, and supplied hay and corn to Kelley for use of Kelley's nearby farm. Abraham served at times CT Page 1491 as manager of Kelley's farm and also did farm work until 1987 for Kelley at Kelley's farm. Abraham frequently worked there twelve hours a day, six days a week. The payments reflected in Kelley's records over this period of time amount, however, to only four thousand dollars.
Kelley later paid a from manager $250.00 a week.
Although the property was and has remained in Abrahams name from 1968 to date, in 1969 Abraham signed a paper recognizing that Kelley had a one-half interest in the property. The paper provided that, upon demand, Abraham would execute a quit claim deed for one half the property to Kelley. This paper also provided that should Kelley contribute more than 50% of the carrying costs, Kelley would be entitled to reimbursement for that amount in addition to his fifty percent interest.
The court finds that Kelley and Abraham each contributed 50% of the purchase and the carrying casts throughout the years including mortgage payments, taxes and insurance; Kelley by direct cash payments and Abraham indirectly by contributing his labor, the fruits of the farm and his labors at Kelley's farm.
Under the terms of the 1969 agreement, the court would find each party to be a one half owner of the subject premises and Kelley is not entitled to any additional reimbursements.
Section 47-33a of the General Statutes cited by Abraham, terminates in one year "any interest in real property existing under an executory. . . agreement for the sale of an interest in real property. . . .or under an option." Read narrowly, as it must be, this statute may not apply to the 1969 agreement. Texaco Refining Marketing, Inc. v. Samowitz,213 Conn. 676, 681-2 (1990).
Kelley has also sought, should the 1969 agreement be invalid, to be recognized as having an equitable interest in the property. Abraham argues that the lopsided terms of the 1969 agreement and Kelley's conduct should preclude Kelley from having any greater interest than his actual cash contributions to the property or as reflected in the mortgage to Kelley given by Abraham in 1981 to secure the payment of $200,000.00. Kelley claims that he should have a majority interest because his cash contributions far exceeded the contributions by Abraham.
The court recognizes that Kelley has clearly and convincingly proven he obligated himself to pay twenty years ago what was considered a large sum of money. Had property values or Kelley's economic condition seriously deteriorated that obligation could have been an albatross around Kelley's neck. Fortune smiled, however, and Kelley should benefit accordingly. See Cohen v. Cohen, 182 Conn. 193, 203-204. The property has a present fair market value in excess of one million dollars.
The 1981 mortgage to Kelley executed at a time when both parties CT Page 1492 feared a dog bite claimant might attach the property is no bar to such a finding. The amount secured represents about $20,000 more than the amount of Kelley's present cash contributions and the mortgage was designed to protect Kelley's cash payments. Kelley, moreover, never received payments on account of that debt as such and never foreclosed that mortgage. See Cohen v. Cohen, supra at 204.
The court will also find Abraham has clearly and convincingly proven that he contributed equally to Kelley in the purchase and maintenance of the property by his cash payments and by his labors and the fruits of those labors made available to Kelley's farm operation.
Accordingly, the court will find Kelley's clearly and convincingly proven equitable interest in the subject property to be a one half interest.[1] See Balzano v. Balzano, 135 Conn. 584, 589.
At the trial and in his written brief Kelley agreed, should his one half equitable interest be recognized, to a reduction in the amount of his mortgage obligation to an amount sufficient to ensure that Kelley will be repaid for his advances on Abraham's behalf and an order that Abraham's half of the property be encumbered only with a mortgage to Kelley in that amount. In view of the court's finding that Kelley and Abraham both contributed equally to the deposit and carrying costs, the court will reduce the amount of the mortgage to zero as an encumbrance upon Abraham's half interest.
In accordance with the foregoing, the court will find for Kelley as to Abraham's counterclaim for past due wages not paid which exceeded fifty (50%) percent of the deposit and carrying costs.
Accordingly, and as conditioned above, with respect to Abraham's life use of the home and the mortgage, the court will declare that Kelley and Abraham are equal one half interest owners of the subject property described as follows.
 A certain piece or parcel of land situated in the Town of Goshen, with all the buildings thereon, bounded and described as follows, containing 200 acres, more or less, to wit:
NORTHERLY: in part by land now or formerly of Everett C. Cummings, et ux, and in part by land now or formerly of the Torrington Water Company;
EASTERLY: in part by land nor or formerly of The Torrington Water Company, and in part by East Street, a public highway;
SOUTHERLY: in part by land now or formerly of Henry J. Berglewicz, et ux; in part by land now or formerly of Frank H. Anstett, land in part by land now or formerly of George D. Pratt; CT Page 1493
WESTERLY: in part by land now or formerly of Frank H. Anstett, land now or formerly of George D. Pratt, and now or formerly of Philip Saunders.
Being the same premises described in Quit-Claim deed from George J. Abraham, et al to Joseph Abraham dated October 2, 1948 and recorded in Volume 39 on Page 134 of the Goshen Land Records; the same premises described in Certificate of Distribution from the Estate of Nora Abraham to Joseph Abraham, et al dated March 21, 1952 and recorded in Volume 22 on Page 459 of the Goshen Land Records; the same premises described is Quit Claim Deed from George Nassif Abousalih to Joseph Abraham and Nora Abraham dated December 1, 1919 and recorded in Volume 28 on Page 620 of the Goshen Land Records; and as described in Warranty Deed from Patrick J. Fitzgerald to Joseph Abraham and George Nassif Abousalih dated March 17, 1919 and recorded in Goshen Land Records.
McDONALD, J.