WILLIAM TURNBULL & another *vs.* SILAS H. POMEROY
& others.

Berkshire.   Sept. 8. — 18, 1885.   FIELD, C. ALLEN, & COLBURN, JJ.,
absent.

A testator, by his will, after expressing the hope that one or both of his sons
would carry on a manufacturing business formerly carried on by his father
and subsequently carried on by himself, and reciting that his son T. was a
minor, gave all his manufacturing property to A. and two others, in trust "to
continue and carry on without interruption, till my son T. shall arrive at the
age of twenty-one years, the manufacturing business now carried on by me, in
the same general manner said business is now carried on, taking up and con-
tinuing said manufacturing business as the same shall be found at my decease."
At the time of the testator's death, it had long been his habit to consign about
half the goods of his manufacture to a firm of which A. was a member and in
which he had a certain share of the profits, allowing the firm commissions and
guaranty on sales; and the trustees continued to do the same after the testa-
tor's death.   The testator was a member of this firm; and, by his will, his estate
remained interested in it for some time after his death.   *Held,* that a charge for
commissions and guaranty on sales might be allowed to said firm after the tes-
tator's death; and that A. might be allowed his share of such charge.

HOLMES, J.   William Turnbull is one of five partners making
up the firm of William Turnbull and Company, and has forty-
seven per cent of the net profits.   He is also one of three
trustees under the will of Theodore Pomeroy.   The question
submitted to us, by agreement of all parties, is whether a con-
siderable sum paid to that firm for commissions and guaranty
on sales of goods manufactured by those trustees was properly
so paid, or whether the whole or some part of it ought to be
accounted for as assets of the trust.

The trust is a peculiar one.   The testator, after expressing
his hope that one or both of his sons will carry on the busi-
ness — a manufacturing business formerly carried on by his
father and subsequently carried on by himself — and reciting
that his son Theodore L. is a minor, gives all the manufacturing
property to William Turnbull, Silas Harris Pomeroy (the tes-
tator's elder son), and Charles Atwater (his clerk), in trust
"to continue and carry on without interruption, till my son
Theodore L. shall arrive at the age of twenty-one years, the
manufacturing business now carried on by me under said name
of L. Pomeroy's Sons, in the same general manner said business

is now carried on, subject to such changes in detail as, in the judgment of said trustees, the best interest of said trust may require, taking up and continuing said manufacturing business as the same shall be found at my decease."

At the time of the testator's decease, it had long been his habit to consign about half the goods of his manufacture to William Turnbull and Company, allowing them commissions and guaranty, in the same manner as done by the trustees. It should be added, that the testator was a member of the firm of William Turnbull and Company; and that, by his will, his estate remained interested in it for some time after his death.

Upon these facts, and from the language of the will, we think that a charge for commissions and guaranty may be allowed to Turnbull and Company, and that William Turnbull may be allowed his share of such charge, without controverting any general proposition touching allowances to trustees. Nevertheless, it is to be remembered that the English rule, refusing compensation for professional or business services which it was not the duty of the trustee to render, and for which he might have employed and paid another, is only a special application of the general rule which refuses trustees compensation for services, as such, of any kind, — *New* v. *Jones*, 9 Bythewood & Jarman Prec. (3d ed.) 731; *Robinson* v. *Pett*, 3 P. Wms. 249, — a rule which does not prevail here. Of course, a trustee cannot contract with himself, and it may very well be that a contract between three trustees and a firm of which one of· them was a member would stand no better. But, when it is once admitted that a trustee may be paid for ordinary services, it is hard not to admit also that there may be circumstances under which he may be allowed an additional sum for extraordinary services which it was not his duty to render, — the allowance not standing on contract any more than in the common case, but being subject to the discretion and control of the court. See *Urann* v. *Coates*, 117 Mass. 41, 43; *Blake* v. *Pegram*, 109 Mass. 541, 553; *Bainbrigge* v. *Blair*, 8 Beav. 588, 595.

Whatever the general principle, there is no doubt that a testator has a right to provide for more liberal compensation to trustees than the law would give them apart from the will. *Willis* v. *Kibble*, 1 Beav. 559. See *Imperial Mercantile Credit*

*Association* v. *Coleman*, L. R. 6 Ch. 558, 568. In this case, the very purpose of the trust is to impose upon the trustees duties which are unknown to the usual trusts for investment and distribution. They are appointed to " continue and carry on without interruption" a great manufacturing concern for a limited time, to tide over the minority of the testator's younger son, and then to hand it over to the sons, so that they may in turn continue the business. The trust could not last more than six years, and it might have been ended in six months by the death of Theodore L. Pomeroy, the minor. Not only must we suppose that the testator meant to authorize his trustees to act in the way which was most expedient from a business point of view, but when we find him directing them to " take up and continue said manufacturing business as the same shall be found at my decease," for the temporary purpose that we have mentioned, we think it pretty clear that he contemplated the continuance of his long established employment of William Turnbull and Company as his selling agents. We cannot regard a relation so important to the success of his manufacture as beyond the scope of his direction as to how the business should be taken up and continued. If the testator authorized the consignment to Turnbull and Company, of course he did not limit his authority to a gratuitous employment. He must be taken to have expected them to be paid, and paid at the usual rates.

We do not understand that there is any dispute between the parties as to the reasonableness of the sums received, if commissions are to be allowed to Turnbull and Company. There is nothing in the will so explicit as to withdraw the rate of compensation from the supervision of the court. The contract between the trustees and the firm is not conclusive, so far as William Turnbull is concerned, and it seems to follow that the interest of his partners also is subject to our jurisdiction. *Collins* v. *Carey*, 2 Beav. 128. *Lyon* v. *Baker*, 5 DeG. & Sm. 622. But we understand that the charges are the same that they were in the lifetime of the testator, and are usual and proper, if any charge is proper. At all events, the question is not before us.

The allowance to the trustees set forth in their account obviously did not purport to be compensation for anything except their duties as such, in superintending the manufacture. It is

true that the commissions, in our view, logically might have been brought into that allowance, but they were not.  They appear as a deduction from the amount received for cloth sold.

*Decree accordingly.*

*W. C. Endicott & F. P. Goulding*, (*T. P. Pingree* with them,) for the plaintiffs.

*G. M. Stearns*, (*A. Prentice*, of New York, with him,) for the defendants.