ROBERT A. WILLIS et al.

*v.*

GEORGE E. CLYMER.

[Filed April 1st, 1904.]

1. A trustee should not be allowed credit for money alleged to have been paid for a judgment against the trust estate merely on his own testimony as to such payment, without any voucher or evidence of judgment or execution.

2. Where an attorney-at-law prepared a trust deed for clients for whom he had acted before, in which deed he was warned as trustee to hold the property, sell the same, and apply the proceeds to pay off all liens and encumbrances, and any and all costs, charges and counsel fees connected with the sale or redemption of the property, the trustee was not entitled to retain any part of the fund arising from the sale of property as remuneration for professional services rendered before the trust deed was made.

3. He was entitled, however, to reasonable counsel fees for services rendered after the execution of the deed.

On bill for accounting.

*Messrs. E. A. & W. T. Day,* for the complainants.

*Mr. George E. Clymer, pro se,* for the defendant.

BERGEN, V. C.

The object of this suit is to require the defendant to account as trustee and to pay over to the complainants whatever may be found due to them on such accounting, and also to procure the removal of the defendant from his position as trustee.

The latter result has already been accomplished since the commencement of this suit by the voluntary withdrawal of the defendant and the transfer by him of his title in the trust estate to the co-trustee.

The trust was created by a deed bearing date May 11th, 1897, made by the complainants, in and by which they conveyed to the defendant and to Robert A. Willis, jointly, all their interests in certain lands, devised to them by the last will and testament of one Jacob Willis upon certain trusts set out in said deed, viz.: *First,* the sale of lands at such times and prices as might, in their discretion, be for the best interests of the grantors; *second,* that the trustees would take, receive and apply the proceeds of any such sale or sales "first to pay off all liens and encumbrances against any and all of said property, and secondly, to pay any and all costs, charges and counsel fees connected with the sale or redemption of any or all of said property;" *third,* to make and render unto each of the said parties, at the end of each and every six months from the date thereof, a true and perfect statement of all sales, moneys received, paid, laid out and expended, and the balance in hand, and in case there were more moneys in hand than was needed to take care of said properties, to pay the balance thereof to the grantors, share and share alike.

It is admitted that the trust was created in order to provide a convenient method to make title in case any of the lands were sold. The defendant admits that, after the execution and delivery of his deed, he made two sales of portions of the land, one to a Mr. Wade, for $1,867, and another to an agricultural company for $500, a total of $2,367. All of these proceeds, the defendant admits, he received, or directed the disbursement of, and should account for, his co-trustee not having had possession of any of the funds. The proceeds of the Wade sale reached the defendant's hands March 27th, 1899, and of the second sale December 10th, 1900. After March 27th, 1899, the defendant was repeatedly called upon to furnish a statement of, and account for, the net proceeds of the first sale. To these demands he apparently paid no attention until November 3d, 1899, when he sent each of the parties in interest a statement, charging himself with the proceeds of sale and taking a credit, amounting in the whole to $1,262, for disbursements, none of which are disputed, excepting an item

of $250, claimed to have been paid as costs, fees and expenses of a sheriff's sale under a common law judgment, the amount of the judgment being less than $300, and held by the trustees by virtue of an assignment thereof to them, for which the defendant had paid $60, and for which payment he had taken a credit. By the statement thus rendered the defendant admitted that he had in hand, March 27th, 1899, money belonging to the complainants amounting to $605. It further appeared that, after the second sale, repeated demands were made by the complainants on the defendant to account for and pay over the money in his hands belonging to the complainants, all of such demands being without avail until, under threats of legal proceedings to enforce it, the defendant furnished a statement, charging himself with the previous balance of $605 and, with the amount of the second sale, making a total of $1,105, which he attempted to discharge by an allowance of $200, paid by him to the firm of attorneys of which he was a member, as counsel fees for services rendered in and about the Wade sale, and also by a general charge of $1,000 for counsel fees from 1891 to date, less the sum of $15 paid him by some of the parties in 1891, the net result being that the complainants, according to his statement, were indebted to him in the sum of $80.

The items disputed by the complainants is the charge of $1,000 for counsel fees, and also of $200, part of the allowance claimed of $250, for expenses of the sheriff's sale above mentioned. The defendant's explanation of the $250 item is that $50 of it was paid by him to the sheriff for his fees and costs; this the complainants do not dispute; that the residue of this item, namely, $200, was paid by him in cash to Mr. Manners, now deceased, formerly a counselor-at-law, practicing in this state; that the trustees had purchased a judgment against one of the parties having some interest in the land, under which an execution was issued and a levy made on the interest of such owner in these lands; that there were other judgments against the same defendant previous to the one so purchased, although no levies had been made thereunder. That, on the day of the sale, Mr. Manners, representing one of the judgment creditors, was pres-

ent and bid on the property; that the defendant stopped the
sale for a short time and induced Mr. Manners to cease bidding
upon payment to him of $200; that the payment was made
in cash and no receipt or voucher taken for the same.

I do not think the trustee should be allowed to discharge
himself for so large a sum of money without a voucher, or some
proof of the payment, other than his own testimony, and cer-
tainly not without some proof of the circumstances connected
with the payment. Mr. Manners is dead, and it is fair to
presume that he accounted to his client for the money. The
judgment is a matter of record, and it would have been, it seems·
to me, very easy for the defendant to have produced the plaintiff
in execution, and shown ·by him that some such payment had
been made. I shall therefore not allow this credit.

With reference to the charge of $1,000 for counsel fees, the
defendant undertakes to justify himself in making this charge
by the following circumstances: that, in the year 1891, some
of the complainants—one of them at least—consulted him
with reference to the interests of the complainants in the lands
devised by Jacob Willis; by the terms of that will a life estate
was given in the lands with remainder to the complainants; that
the life tenants had procured an opinion from a firm of lawyers
in New York City that under the terms of the will their estate
was a fee-simple, and the defendant was employed to give his
opinion on the matter. That he agreed to make the searches
necessary and furnish the opinion for $50; that of this sum
only $15 was ever paid; that he furnished the opinion, estab-
lishing the rights of the complainants as remaindermen. That
from 1891 to 1897 he was rendering services to these people,
but furnished no evidence from which the amount or character
of such service can be ascertained beyond the fact that, on two
occasions, he negotiated for the sale of part of the lands, which
was not accomplished, because the persons to make the deed
could not agree upon the price.

· In my opinion, the defendant is not entitled to any credit on
account of the trust funds for any services rendered by him pre-
vious to the execution of the trust deed. The defendant was

a counselor-at-law and prepared the trust deed, which stated in clear terms what application he should make of the proceeds of any sales, and he was limited in the payment of costs, charges and counsel fees to such as were connected with the sale or redemption of any or all of said property. Nothing. is said in the trust deed that any of this money was to be taken to pay any previous claim. The defendant knew, that by the terms of the trust, which he had accepted, that he was to account for the proceeds of the sale of that property in the manner prescribed in the deed, and that he had no right to take any of the trust funds to pay any previous claim, unless it was provided for in the deed, and if he had such a claim, which he expected to be paid out of the proceeds of the sales, naturally, he would have provided for it. The parties whom he claimed he had served were to execute the deed; if it was their understanding that the trust moneys were to be used to pay him for previous services, they would have been perfectly willing to have it provided for in the deed; if they demurred, the defendant could have declined to accept the trust on the terms stated.

The next question that arises is, is he entitled to have any compensation by way of counsel fees, for services rendered by him in the execution of his trust?

Ordinarily, an executor, or a trustee, is only entitled to the compensation which the law provides; he is not entitled to counsel fees, but courts of equity have at times awarded them where the circumstances of the case seem to justify it. In this case the trust did provide for the allowance of counsel fees connected with the sale or redemption of the property, and I think I am justified in allowing to the defendant reasonable counsel fees for services rendered after the execution of that deed. The first service rendered was connected with the sale of land to Mr. Wade, and the character of the service, as it appears from the evidence, justifies a liberal allowance; he himself has fixed that in the last statement which he produced at $200, which he claims to have paid Clymer and Johnson for services in the Wade sale. I think the amount reasonable and ought to be allowed.

The only other service which he rendered was connected with the sale to the agricultural company, for which he received $500.

It further appears that the defendant went to Denver in October, 1901, and on his return stopped for a day in Cincinnati to look after what he supposed to be some interest which the complainants claimed in certain lands in the city of Cincinnati. I am not disposed to consider this service of any great value; it was perfectly manifest to the defendant, before he went there, that the complainants had no interest in the land that could be maintained. He himself admits that the very first interview with a friend from Washington Territory satisfied him that the claim was a stale one, and it must have been manifest to him, as it would have been to anyone, that the claim for a large part of the city of Cincinnati, based on a land warrant one hundred years old, could not be maintained, and I am of opinion that $150 will be a liberal allowance for the services rendered by him as counsel in addition to the $200 claimed by him in connection with the Wade sale.

I am satisfied that the allowances are liberal when we consider the manner in which the defendant has executed this trust. He did not render to each of the parties a statement at the end of every six months; what he did furnish was only done after repeated demands and were in their character very unsatisfactory.

I find that the defendant should be charged with $805 as the net proceeds of the Wade sale, received by him on March 27th, 1899, from which should be deducted $200 counsel fees allowed for services in that matter, leaving a balance of $605, to which interest should be added from that date; and that there is due from the defendant the further sum of $500 on account of the sale to the agricultural company, received December 10th, 1900, less $150, allowed for services, so that he is to be charged with $350, with interest from that date.