ABRAHAM HOFFMAN *vs.* FIRST BOND & MORTGAGE COMPANY, INCORPORATED, TRUSTEE, ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 6th—decided February 21st, 1933.

*Aaron J. Palmer,* for the appellant (plaintiff).

*Wallace W. Brown,* with whom, on the brief, was *Henry J. Marks,* for the appellee (the named defendant).

*William H. Leete* appeared for the appellee (defendant Knox).

HINMAN, J. On February 28th, 1925, Kaplan and Rulnick executed and delivered to the named defendant as trustee forty promissory notes of $500 each and four hundred of $100 each aggregating $60,000, payable to the bearer, or if registered, to the registered holder, and to secure these notes mortgaged to the defendant corporation as trustee land in Hartford on which is now a brick building containing stores and apartments. The present plaintiff is the holder and owner of fifty of the $100 notes, and the balance of the notes are held and owned by sixty-seven persons residing in various towns and cities in several States. By mesne conveyances the title to the premises became vested in Louis Schreiber, Inc. The notes became due and were unpaid and on March 3d, 1931, the defendant as trustee commenced an action to foreclose the mortgage. On April 17th, 1931, the court rendered a judgment of foreclosure by sale, the amount of the mortgage debt being found to be $62,400. Pursuant to statute (§ 5083) the real estate was appraised at $85,000. On May 1st, 1931, the defendant moved for permission to bid at the foreclosure sale, for the benefit and protection of the noteholders, a sum sufficient to cover the amount of the mortgage debt and taxes, municipal assessments, and costs, representing that, notwithstanding the appraisal of $85,000, there was grave doubt whether any outside bid sufficient in amount to protect the noteholders would be made, owing to the depressed condition of the real-estate market. The plaintiff and one other holder of $5000 of notes opposed the motion, but it appeared that more than a majority in amount of the noteholders wished the defendant to bid as proposed, and it did not ap-

pear that there were more than the two nonassenting noteholders. On May 13th the motion was granted and at the foreclosure sale on May 16th, no substantial bid for the property being made except that of the defendant trustee, the latter purchased the real estate, bidding therefor the sum of $60,000, which was less than the amount of the judgment debt, and brought into court only the amount of the expenses of the sale. On May 22d, a supplemental judgment was rendered confirming the sale and approving the conveyance to the defendant trustee. No appeal was taken from this judgment, and the defendant as trustee entered into possession.

About a month later the present action was commenced, the prayers for relief including claims for a partition of the real estate, or a sale thereof and a division of the proceeds among the noteholders, and the appointment of a receiver to make the sale and, pending it, to manage the property. By order of court, James T. Knox was cited in to defend for the benefit of all the other noteholders, the trial court found for the defendants upon all the issues and prayers for relief and rendered judgment accordingly. The finding on this appeal, in addition to the foregoing facts, discloses the following: Since the defendant took possession it has managed the real estate in a capable and efficient manner, and the rentals, although obtained under very adverse conditions, are substantially sufficient to pay carrying charges and interest to noteholders. There has been no improvement in the realestate market of Hartford but, on the contrary, market conditions are worse than in 1931. The defendant has received no offer which would yield the noteholders payment in full or nearly in full. The real estate is reasonably worth $74,500, but at a forced sale under present market conditions it appears certain

that no price approaching $60,000 could be obtained and might well be $25,000 or lower. The defendant Knox for the other noteholders is opposed to partition or sale under these conditions, and desires to have the defendant trustee continue in the management of the real estate. The defendant corporation intends to continue to hold and manage the real estate as trustee in the expectation that eventually the noteholders will receive more than could now be realized by a sale at auction.

The appellant's principal contentions relate to the conclusions, drawn from the facts found, that the purposes of the trust created by the mortgage have not been attained or the trust terminated, and that the defendant, in holding and managing the real estate, is still acting in the capacity of trustee under an active express trust. The plaintiff claims that, instead, the defendant holds title as trustee of a dry and passive trust, or even if the trust be held to be active, that the trustee may not hold the premises for an indefinite time but must sell them as soon as reasonably possible.

Clearly, up to the time of the foreclosure sale the defendant was and acted as trustee of an express trust created by the mortgage, with active powers and duties thereunder. The mortgage specifically vested the right to enforce it exclusively in the trustee in case of default. Thereupon it "may proceed to call said notes, or to enforce the rights and lien of said noteholders under this mortgage, either by foreclosure, or any other proper proceeding, in any proper court, by way of remedy, as said trustee shall deem most effectual to protect said noteholders." It is provided further that if by strict foreclosure the equity of redemption is extinguished, the trustee shall hold title to the premises in trust for the owners or holders of the notes "to be sold, disposed of, or conveyed by said trustee at its

option, for such price and upon such terms and conditions as said trustee may deem for the best interest of such note owners or holders." The plaintiff admits that "unquestionably this language, in the event of a strict foreclosure, would have served to create an express trust with the specified active duty of selling, disposing of, or conveying the premises." The mortgage further provides "in case a decree of foreclosure by sale is passed, or in case of a sale after strict foreclosure as above, the proceeds of such sale . . . shall be paid to such note owners or holders pro rata in accordance with their holding of said notes." No express provision is made for subsequent sale by the trustee in case of its own purchase at the foreclosure sale, and the appellant maintains that upon such purchase the defendant became a mere passive depositary of the property and holds the bare legal title without discretion and without active duties, so that the *cestuis que trustent* are entitled to possession of the property and may call upon the trustee for a conveyance of the legal estate. *DeLadson* v. *Crawford,* 93 Conn. 402, 411, 106 Atl. 326; *Cone* v. *Dunham,* 59 Conn. 145, 157, 20 Atl. 311. However, the plaintiff concedes that, owing to the large number of noteholders, conveyance to or partition among them would be impracticable and himself invokes the equity powers of the court to substitute immediate sale of the property and a distribution of the proceeds.

The trial court held that the provision in the mortgage concerning sale after strict foreclosure extended, by inference, to acquisition of the title by the trustee through purchase in foreclosure by sale. The appellant contends that this inference is unwarranted and inadmissible. But even if he be correct in this, the exigency which arose must be regarded as one which was so unanticipated that no express or implied pro-

vision was made for it in the mortgage, and the result reached by the court is afforded ample support in its equitable powers. "Trustees, in carrying the trust into execution, are not confined to the very letter of the provisions. They have authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making them effectual. This implied discretion in the choice of measures and acts is subject to the control of a court of equity, and must be exercised in a reasonable manner." 3 Pomeroy's Equity Jurisprudence (4th Ed.) p. 2428; *New York Trust Co.* v. *Michigan Traction Co.*, 193 Fed. 175, 180. When exigencies arise which were not contemplated by the creators of the trust, and which, had they been anticipated, undoubtedly would have been provided for, the court, in such emergency, may sanction acts by the trustees which, while not directed by the trust instrument, are such as the court deems the parties would have dictated had they anticipated the peculiar development. *Curtiss* v. *Brown,* 29 Ill. 201; note, 46 L. R. A. (N. S.) 44; 26 R. C. L., p. 1379, § 241. It is one of the most important and essential powers of a court of equity to raise the implications growing out of the state of trust property, the purposes to be accomplished and the mode adapted to that end, without violence to or forced construction of the trust instrument. *Sturges* v. *Knapp,* 31 Vt. 1, 52. In *Nay Aug Lumber Co.* v. *Scranton Trust Co.,* 240 Pa. St. 500, 87 Atl. 843, as in the present instance, the mortgage did not expressly confer upon the trustee for bondholders power to bid in the property at foreclosure sale, yet it was held that the trustee had implied power to do so, for the benefit of the bondholders, at a figure sufficient to cover the debt, interest and costs, and not in excess of the value of the prop-

erty. "It is difficult to see any good reason why a trustee should not be permitted to bid at a foreclosure sale, if it be necessary to protect the interests of the bondholders. But little authority upon the question can be found, probably for the reason that corporation mortgages usually provide specifically for the purchase at foreclosure sales, of mortgaged premises by the trustee, in the interest of the bondholders, and for the purpose of reorganization. Where such power is not explicitly given, it may very well be implied. This doctrine is recognized by the textbooks writers." (p. 504.) See also 5 Cook, Corporations (8th Ed.) § 885. The order of the Superior Court in the foreclosure suit which preceded the present action, authorizing the trustee to bid "for the benefit and protection of the noteholders" was, necessarily, based upon a like implication, and was justified by the situation. The trustee was the constituted representative and protector of noteholders who are numerous, widely scattered, and unorganized, and therefore impotent to effectively protect their own interests from sacrifice at a forced sale, precipitated by a third party, in a demoralized market.

When default of payment of the mortgage debt occurred and until foreclosure was consummated, the trust was active and the trustee's duties correspondingly so. "It not only is not a dead, dry trust, but one of the most active and momentous responsibility." *Sturges* v. *Knapp, supra*, p. 55. The trustee was bound to use the same diligence and care in protecting the interests of the noteholders that a prudent man would use in protecting his own interests. *Nay Aug Lumber Co.* v. *Scranton Trust Co., supra*. It would be absurd to regard the trustee's duty as terminated at the very time when its protection was most needed. If it had stood by and permitted the property to be sold for a

fraction of its value, the trustee might have been exposed to the charge of "supine negligence or wilful default" which was sustained in *Watson* v. *Scranton Trust Co.*, 240 Pa. St. 507, 512, 87 Atl. 845, a sequel to *Nay Aug Lumber Co.* against the same defendant, *supra.*

In an emergency a court of equity may, for the preservation of the trust and the protection of the beneficiaries from loss, even authorize a trustee to depart from the terms of the trust agreement. *New Jersey National Bank & Trust Co.* v. *Lincoln Mortgage & Title Guaranty Co.*, 105 N. J. Eq. 557, 148 Atl. 713; *Marsh* v. *Reed*, 184 Ill. 263, 56 N. E. 306; *In re New*, L. R. (1901) 2 Ch. Div. 534; 2 Perry, Trusts (7th Ed.) § 764. In the *New Jersey National Bank & Trust Co.* case, *supra*, it was held that the great and widespread depression in real estate in New Jersey, resulting in an abnormal number of purchases at foreclosure sales and inability to dispose of the properties without great losses constituted such an emergency. "The real estate *values* are actually existent; it is the *market* which is temporarily lacking, and which will eventually return." In the present case the course of action being pursued by the trustees as holders of the title by purchase in foreclosure by sale substantially adopts and follows that prescribed in the practically analogous instance of the taking of title under strict foreclosure.

Considerations similar to those which justify the right to bid in at the foreclosure sale dictate that the trustee hold and administer the property acquired thereby until such time as it can be disposed of without unnecessary sacrifice and loss to the noteholders. This right and duty would seem to be a necessary corollary and consequence of the right to bid and buy. If, as the plaintiff claims, the trustee's duty be, instead, immediately after having so acquired the title, to make

another forced sale in the same abnormally depressed market, the exercise of the right to purchase at the foreclosure sale would be but a futile gesture. Irrespective of whether, through the provision for such action after strict foreclosure or otherwise, the mortgage may be construed as imposing the right and duty to temporarily hold and manage the property, ability to confer it, under the circumstances disclosed by the finding, is within the equity powers of the court and is, in effect, exercised by its refusal to grant the prayer of the plaintiff for a sale and distribution of the proceeds forthwith. The record shows that the question of how long the defendant may continue to hold title before making a sale is not involved in this case. The right and duty is subject to termination at the instance of either the trustee or noteholders whenever it is shown that conditions require or warrant it.

What has already been said is deemed sufficient to demonstrate that the situation following the purchase at the foreclosure sale does not create an independent resulting trust, as the appellant also claims. *Fox* v. *Shanley*, 94 Conn. 350, 355, 109 Atl. 249.

There is no error.

In this opinion the other judges concurred.