ANNA BAYDROP ET ALS. *vs.* SECOND NATIONAL
BANK, TRUSTEE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 6th—decided August 3d, 1935.

*Leonard M. Daggett* and *Stanley Daggett,* for the appellant (defendant).

*William A. Bree,* with whom, on the brief, was *Hubert L. Dickerman,* for the appellees (plaintiffs).

HINMAN, J. On August 2d, 1926, George Ratner mortgaged to The Parker-Smith Company as trustee and to its successors, premises in New Haven to secure the payment of two hundred and seventy promissory

notes of the total sum of $130,000, payable on or before five years after date. The transaction appears to have been similar in substance to those involved in *State* v. *Parker,* 112 Conn. 39, 151 Atl. 325; 114 Conn. 354, 158 Atl. 797, the notes secured by the mortgage being in relatively small amounts aggregating the amount of the loan, and sold to the public. The three plaintiffs are the owners and holders of these notes to the amount of $3500. The mortgage provided that upon resignation of the named trustee or any vacancy in trusteeship the defendant, the Second National Bank of New Haven, should become trustee "and in such case said bank shall not be entitled to receive from said noteholders any compensation for its services as such trustee, such compensation having been already provided for by the grantee." It also contained a provision that "If upon the proceedings for a foreclosure of this mortgage a decree of strict foreclosure shall be passed, and the equity of redemption of the grantor shall have been extinguished, the trustee shall hold title to the aforsesaid mortgaged premises in trust for the owners or holders of said notes, to be sold, disposed of, or conveyed by said trustee at its option, for such price and upon such terms and conditions as said trustee may deem for the best interest of said note owners or holders."

On June 7th, 1929, the defendant qualified as successor trustee to The Parker-Smith Company and since has been acting as such. For its services as trustee under the Ratner mortgage it received from The Parker-Smith Company $162.50. Thereafter the defendant foreclosed the mortgage and on June 7th, 1930, title to the premises vested in the defendant by strict foreclosure and has so remained. No offer has been received by the defendant for the purchase of this property, nor has there been any opportunity to dis-

pose of it without considerable sacrifice. On January 1st, 1930, the bank organized a real-estate department for the purpose of managing all properties which came into its control as successor trustee to The Parker-Smith Company on mortgages similar to the Ratner mortgage and since June 7th, 1930, the defendant, by that department, has managed this property and collected the rents therefrom, and from time to time sent to all noteholders financial statements covering the operation thereof. It has retained under a claim of compensation for such management of the Ratner property a commission of 5 per cent. of the rental income therefrom, amounting to $2111.91.

In December, 1933, and April, 1934, the plaintiffs made demand of the defendant for a complete list of the names of the other noteholders under the mortgage, the purpose stated for the request being to enable the plaintiffs to get in contact with all the noteholders and lay before them plans for taking over the property themselves and handling it in a way which the applicants felt would be more beneficial to the noteholders. The defendant has never furnished this information to the plaintiffs.

The plaintiffs in their complaint asked for removal of the defendant as trustee and appointment of a successor, an accounting including credit and payment to the noteholders of the commissions retained by the defendant for management of the property, and that the defendant be instructed to furnish the plaintiffs a complete list of names of the noteholders. Upon the facts found, including those above stated as deemed important to the present inquiry, the trial court concluded that "the plaintiffs are not entitled to a decree for removal of the defendant as trustee, there appearing no basis for a conclusion that the defendant acted other than in good faith," but that "the defendant is

not entitled to charge compensation for the management of the mortgaged premises even after title vested in it by strict foreclosure," and that "the plaintiffs are entitled to an accounting for all property received and expended by the defendant and to a complete list of names and addresses of all the noteholders having an interest in the trust estate." Judgment was rendered, accordingly, that the defendant render an accounting, including therein a list of the noteholders, and return to the corpus of the estate the $2111.91 retained as compensation for management, but denying removal of the trustee. The present appeal of the defendant centers upon the conclusions that it is not entitled to compensation for management and that the plaintiffs are entitled to a list of all the noteholders, and we discuss, in order, the assignments attacking them.

While a trustee is not entitled to compensation in addition to that fixed by the instrument creating the trust or by statute for services within the duties imposed upon him by that instrument or by law, there are circumstances under which he may be allowed a reasonable additional sum for special or extraordinary services, outside and beyond the general duties of the trust, e. g., "services of a nature not usually required of a trustee and for which he would have had the right to employ another person." 1 Perry, Trusts & Trustees (7th Ed.) p. 720; 4 Bogert, Trusts & Trustees, pp. 2858, 2867; 65 C. J. p. 926; *Turnbull* v. *Pomeroy,* 140 Mass. 117, 118, 3 N. E. 15; *Willis* v. *Clymer,* 66 N. J. Eq. 284, 57 Atl. 803; *Jarrett* v. *Johnson,* 216 Ill. 212, 74 N. E. 756; *In re Gerbereux's Will,* 266 N. Y. Sup. 134, 142; *In re Berri's Will,* 224 N. Y. Sup. 466. We do not understand that the right of a trustee to charge and a court to approve such additional compensation in a proper case is questioned here, but the issue is whether the situation presented affords occasion for its

exercise. The plaintiffs claimed and the trial court held that the provision in the instrument—the mortgage—creating the trust that the bank, as successor trustee, "shall not be entitled to receive from [the] noteholders any compensation for its services as such trustee" debars it from any claim to compensation for services in the management of the foreclosed premises, which, the court's conclusion implies, were held to be within the duties of the trustee as contemplated and provided by the instrument creating the trust. This conclusion is to be tested, therefore, by construction of that instrument, so far as it constitutes a contract between the noteholders and the defendant, as to what services were intended to be and are covered by the provision in effect limiting the compensation therefor to that "already provided by the grantee" (The Parker-Smith Company, original trustee) by the payment to its successor of $162.50. To this end the contract is to be taken as a whole, and all its relevant provisions considered in connection with each other and in such light as is afforded by the situation of the parties and the circumstances existing at the time. *Finlay* v. *Swirsky,* 103 Conn. 624, 634, 131 Atl. 420; *Bronx Derrick & Tool Co.* v. *Porcupine Co.,* 117 Conn. 314, 318, 167 Atl. 829.

Careful analysis of these provisions discloses that the duties expressly or by fair implication made incumbent upon the trustee were the keeping of transfer books for registration of the notes, collection of interest, and of principal at maturity if collectible, and division among the noteholders, release of the mortgage upon payment, such supervision as was necessary to determine whether the mortgagor was complying with his covenants and agreements as to waste, insurance, taxes and assessments, and the like, and enforcement of the mortgage, by foreclosure if necessary, in

case of default; also, if the equity of redemption of the mortgagor be extinguished by strict foreclosure, to hold the title in trust for the noteholders "to be sold, disposed of, or conveyed" by the trustee. As to significant circumstances, in 1926, when the mortgage was made, the real-estate market in New Haven "was on the upturn," the finding states, and so continued until 1930, during which period there was "a fairly rapid turnover in real estate." The mortgage contained no provision with reference to management of the premises in the event that title and possession should become vested in the trustee by virtue of strict foreclosure. The only provision applicable to such a contingency was that the property should be sold and conveyed for such price and upon such terms and conditions as the trustee may deem for the best interest of the noteholders, obviously contemplating a quick disposal. We find nothing in the facts or in the contract to indicate that the parties at that time considered or in reason could have foreseen that there would be any considerable delay in disposing of the property without loss to the noteholders. Clearly, we think, it was beyond the purview of any of the parties that, as happened, the market would become so stagnant that no sale could be effected, at least without great sacrifice to the noteholders, and that the trustee, as the only alternative, would be called upon to assume full management of the property and continue it for a period of years.

While this situation, lamentably, is not "special or extraordinary" today, it was practically unthinkable in 1926, which time is the criteron significant as to the intent of the parties. As in *Hoffman* v. *First Bond & Mortgage Co., Inc.*, 116 Conn. 320, 164 Atl. 656, there arose, and from a like cause, an exigency not contemplated by the creators of the trust or provided for as,

if anticipated, it undoubtedly would have been. In that case we held (p. 326) that in such an emergency the court might sanction acts by trustees which, while not directed by the trust instrument or inferable therefrom, the court deems the parties would have provided for "had they anticipated the peculiar development." So here, doubtless if the propriety of the action of the trustee in holding and managing the property, under the circumstances, was questioned, it might well be sustained on the same ground. Equally, it seems, a right to reasonable compensation for services, the need for which was unanticipated and therefore not within the contemplation of the parties when the contract was made or when (1929) the defendant assumed the trust, may be affirmed by a court of equity. It is to be noted, also, that the contract apparently intended some special compensation to the trustee if foreclosure became necessary, as it provides that in case of foreclosure by sale or of a sale after strict foreclosure "the proceeds of such sale, less all proper charges and expenses of the trustee, including reasonable attorney's fee," shall be paid to the noteholders. The trustee is expressly authorized to employ suitable agents, and the plaintiffs tacitly concede that if the defendant, instead of managing the property through its own real-estate department, had employed a third party to do so the same commission claimed by the defendant would have been a proper charge against the trust estate. It also is conceded that if the defendant is entitled to any compensation the 5 per cent. commission is a reasonable charge, and there was no claim of mismanagement.

On the whole, it is our view that in occasion and nature the services in question are not within the scope of those for which it was the true intent of the contract provision that the trustee should have no compensation

further than the relatively nominal sum received when it succeeded to the trust, and we hold that the defendant is entitled to the compensation claimed for management of the premises after foreclosure.

The other conclusion, which accords the plaintiffs information as to the identity of the other noteholders, is correct. It is a general principle that a beneficiary is entitled to obtain from the trustee all information as to the trust and its execution for which he has any reasonable use. 4 Bogert, Trusts & Trustees, p. 2781; 2 Perry, Trusts & Trustees (7th Ed.) § 822; Lewin, Trusts (13th Ed.) p. 662; *Perrin* v. *Lepper,* 72 Mich. 454, 456, 40 N. W. 859; *Wylie* v. *Bushnell,* 277 Ill. 484, 115 N. E. 618; *Woolf* v. *Barnes,* 93 N. Y. Sup. 219, 225.

The rights of beneficiaries to such information, and their limitations, are analogous to the privileges of stockholders with regard to inspection of corporate books and papers. 4 Bogert, Trusts & Trustees, p. 2783; *Bergelt* v. *Roberts,* 258 N. Y. Sup. 905, 911, affirmed 258 N. Y. Sup. 1086. A stockholder's right, unless altered by statute, is to make examination of books and records at reasonable times, provided that the purpose is germane to his interest as a stockholder, proper and lawful in its character, and not inimical to the interests of the corporation itself. *State ex rel. Costelo* v. *Middlesex Banking Co.,* 87 Conn. 483, 485, 88 Atl. 861; 22 A. L. R. p. 25, note. Inspection must be asked for in good faith, for a specific and honest purpose, not for one which is speculative or vexatious. 14 C. J. p. 855. The general right of inspection necessarily includes access to information as to the identity of the other stockholders. Specific judicial precedent as to rights of noteholders, as in this case, is lacking and cases pertaining to the closely analogous rights of a bondholder to secure the names of his fellow

bondholders are few, inconclusive, and afford no guide as to the circumstances under which a bondholder's list may be obtained. *Bergelt* v. *Roberts,* supra; *Nemerov* v. *New York Title & Mortgage Co.,* 268 N. Y. Sup. 588, 596; *Firebaugh* v. *Traff,* 353 Ill. 82, 186 N. E. 526; 44 Yale Law Journal, p. 498. However, no reason appears why the general principle relating to stockholders should not be applicable. The qualifications attached to the right confine its exercise to cases where, in good faith, information is sought for legitimate purposes in the protection of the noteholders' investment, and it may be restricted by the court to such uses if deemed necessary. The declared purpose of the information sought and ordered to be given in the present case seems fully to satisfy these qualifications.

There is error only as to that part of the judgment which directs the return of the $2111.91, compensation for management, to the corpus of the trust estate, and the case is remanded to the Superior Court with direction to enter a judgment in accordance with this opinion.

In this opinion the other judges concurred.