BERTHA M. KAISER ET ALS. *vs.* THE SECOND NATIONAL BANK OF NEW HAVEN, A UNITED STATES CORPORATION OF NEW HAVEN, TRUSTEE.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 4th—decided July 22d, 1937.

*Samuel H. Platcow*, with whom was *Hubert L. Dickerman*, for the appellants (plaintiffs).

*Stanley Daggett*, with whom was *Leonard M. Daggett*, for the appellee (defendant).

AVERY, J. The facts in this case are substantially similar to those in *Baydrop* v. *Second National Bank*, 120 Conn. 322, 180 Atl. 469. The plaintiffs were noteholders under a mortgage given to The Parker-Smith Company, as trustee, and brought this suit against the defendant in possession of the property by judgment

of strict foreclosure as successor trustee, asking that the defendant be required to account, to give a list of the names and addresses of the noteholders under the mortgage, to return to the plaintiffs all moneys collected as commission and retained by it not in accordance with the terms of the deed of trust, that the defendant be removed as trustee and a new trustee appointed, and that the court order the trustee to transfer to them by deed their proportionate interest in the property. To this complaint, the defendant filed an answer and cross-complaint praying that the court examine and approve its accounts and asking advice of the court upon various questions arising out of the administration of the trust. The plaintiffs' prayer for an accounting was withdrawn in open court, and, after hearing, the court entered judgment that the defendant give the plaintiffs a complete list of names of noteholders under the mortgage and found the other issues for the defendant; and further found that a decision on the defendant's prayer for relief was unnecessary, except that the defendant was advised to charge the expense of the action against the income and corpus of the trust estate, leave of court having been first obtained. From this judgment, the plaintiff has appealed.

The pertinent facts as they appear from the finding are as follows: On April 29th, 1926, Frank Dainesi and Frank Rubino mortgaged to The Parker-Smith Company, as trustee, and to its successors, certain real estate in New Haven to secure the payment of four hundred and fifty promissory notes of the aggregate amount of $170,000. The mortgage deed is the same in form as that involved in *Baydrop* v. *Second National Bank,* supra; it contained the same provisions with respect to the resignation and discharge of The Parker-Smith Company as trustee, the defendant

thereupon becoming trustee and succeeding to all rights, powers and duties of The Parker-Smith Company, and the same provision that the trustee should not be entitled to receive compensation from the noteholders for its services as such trustee, such compensation having already been provided for by The Parker-Smith Company. The plaintiffs are the owners and holders of notes aggregating $16,800 secured by the mortgage. On June 7th, 1929, the defendant bank qualified as successor trustee to The Parker-Smith Company, pursuant to the terms of the deed and has since been acting as such. At the time the mortgage notes were issued the defendant received $212.50 from The Parker-Smith Company in payment for its services as trustee under the mortgage. The defendant foreclosed the mortgage and title to the property vested in it by strict foreclosure on May 24th, 1933. The present value of the property is estimated at between $110,000 and $120,000. It is not possible to sell it for its present value. There is no market for large pieces of property and the defendant has taken no steps to secure a purchaser except to mention it to parties who might be interested and to answer questions; and there has been no opportunity to dispose of the property since the defendant acquired title, except for an offer of approximately $45,000 which was rejected by a committee of noteholders. Since the foreclosure, the property has been managed by defendant's real-estate department for which services the defendant has retained 5 per cent. of the rents collected by it from the property, amounting to the sum of $2406.69.

One of the principal claims of the plaintiffs is that the defendant is not entitled to make this charge for its services. In the *Baydrop* case, we held that the necessity of the continued holding and management

of the property by the bank presented a situation not in the contemplation of the parties when the mortgage was made and that the services of the bank in managing it were outside and beyond the general duties of the trust and were of a nature entitling it to compensation. The considerations there set forth are all applicable to the case before us and the decision there made is controlling unless the plaintiffs are right in their contention that a different result is required because of certain additional evidence not before the court in the *Baydrop* case. This additional evidence consists of a contract between The Parker-Smith Company and the Second National Bank of New Haven dated January 31st, 1922, wherein the bank agreed to perform certain services in connection with the notes to be issued under various mortgages by The Parker-Smith Company. The other additional evidence consists of two circulars mailed by The Parker-Smith Company to all of its investors to induce the sale of mortgage notes. The plaintiffs contend that the additional evidence contained in these three documents construed with the mortgage deed establishes the fact that the parties contemplated and intended that no compensation should be received for the services rendered by the defendant in this case.

The contract between The Parker-Smith Company and the Second National Bank of New Haven, which was placed in evidence, provided that the bank would assume and perform "the duties which may reasonably be required of the trustee under said mortgages, and will without charge or expense to any of the holders of said notes, attend to the collection and remittance of interest thereon, the collection and remittance of the principal thereof, the release of said mortgage, and any legal or other acts and proceedings reasonably required to be done and pursued as trustee

of such mortgage or mortgages, and for its services in the collection and remittance of both interest and principal, and in giving discharge of any such mortgage upon final payment, it shall have no right to recover against said Company, but shall be deemed to have been fully compensated by the application of the monies deposited with it by said company in the manner hereinafter set forth." This contract gives the plaintiffs no right and imposes upon the defendant no obligation which was not given or imposed by the mortgage deed, which is summarized in the *Baydrop* case, supra, p. 327. The circulars put out by The Parker-Smith Company to its investors, among other things, referred to the arrangement between the bank and the company that the bank should succeed the company as substitute trustee if the company should resign because of some unlooked for circumstances; and the care of the mortgages and the service rendered by the company would be rendered by the bank, and that these services would be rendered free of charge to the investors. In one of these circulars was quoted a letter from the defendant's trust officer to the company wherein he referred to the duties to be performed by the bank in the authentication of the notes, and stated that the bank would succeed the company in the case of a vacancy in the trusteeship, and that the compensation of the bank for acting as such trustee had been arranged for prior to the issue of the mortgage, and that by reason of the arrangement a purchaser of a note would be able to know he was buying a genuine first mortgage note and "if there is any change in the trusteeship no expense on that account will fall upon him."

There is nothing in either the contract or the two circulars whereby the purchaser would be led to believe that the defendant or The Parker-Smith Com-

pany, in case of foreclosure of the property and inability to dispose of it would manage it for an indefinite period without compensation. On the contrary, the deed of trust provided: "In case a decree of foreclosure by sale is passed, or in case of a sale after strict foreclosure as above, the proceeds of such sale, less all proper charges and expenses of the trustee, including reasonable attorney's fee, shall be paid to such note owners or holders pro rata in accordance with their holding of said notes, and the trustee may deduct said charges, fees and expenses from the funds in their hands realized from the sale of said property, and shall be only accountable to said note owners or holders for the balance then remaining." It further provided: "The trustee may secure and employ in the management of said trust suitable agents and attorneys, and in case of any default by the grantors, and the trustee deems it advisable to begin legal action, all costs and expenses including attorney's fees, shall be paid by the grantors;" etc. Clearly, as we said in the *Baydrop* case, page 328, "it was beyond the purview of any of the parties that, as happened, the market would become so stagnant that no sale could be effected, at least without great sacrifice to the noteholders, and that the trustee, as the only alternative, would be called upon to assume full management of the property and continue it for a period of years." The *Baydrop* case is decisive of this case and of the defendant's right to compensation for reasonable value of services performed in the management of the property since title was assumed after the decree of strict foreclosure.

After judgment, the plaintiffs made a motion that the judgment be reopened and that they be given permission to cite in the other noteholders. This motion was denied by the trial court and the plaintiffs assign

this as error. It appears that the plaintiffs made a motion that they be given a complete list of note-holders, which was denied without prejudice on May 28th, 1935, while the *Baydrop* case was pending. In that motion, they did not state why they wanted the list, nor did they state that they desired to cite in the other noteholders. The *Baydrop* case was decided August 23d, 1935, and in that decision the right of a noteholder to such information was affirmed. The plaintiffs took no further action in the matter previous to the hearing of the case on October 13th, 1936. They then proceeded with the hearing in which one of the claims they presented was for the termination of the trust as to them. The trial court in its judgment refused to consider that claim because the other note-holders were not parties. The plaintiffs, on November 5th, made a motion to have the judgment opened in order to cite in the other noteholders. This was the first time they had asked to have this done, and we cannot know that had they sought to have them cited in as necessary parties upon the claim for the termination of the trust, the trial court would not have granted that motion. To open the judgment would have required the relitigation at least of this issue. The sole ground advanced for the relief is to avoid multiplicity of litigation. The effect of the denial of the motion was to leave the parties to a remedy by another action if they saw fit to bring it rather than to prolong the present one. The opening or vacating of a judgment during the term in which it was rendered is within the legal discretion of the court. *Tyler* v. *Aspinwall,* 73 Conn. 493, 497, 47 Atl. 755; *Ideal Financing Asso.* v. *LaBonte,* 120 Conn. 190, 195, 180 Atl. 300. Under the circumstances, the court did not abuse its discretion in denying the motion of the plaintiffs in the present case.

In any event, the denial of the motion is not ground for a new trial. The plaintiffs contend that the trust should be terminated and the plaintiffs' proportional interest in the real estate be conveyed to them. It appears that there are four hundred and fifty promissory notes secured under this mortgage. How many individuals hold them does not appear. All that we know from the finding is that the plaintiffs hold notes to the aggregate sum of $16,800. Obviously the transfer of undivided interests in apartment house property such as that in the present case among a large number of people would constitute a complex and intricate impediment to final liquidation by reason of the outstanding interests inevitably arising. In similar cases, our statutes provide for the sale and division of the proceeds. General Statutes, §§ 5925, 5926, 5927; *Lyon* v. *Wilcox*, 98 Conn. 393, 395, 119 Atl. 361; *Richardson* v. *Monson*, 23 Conn. 94, 97. Where the right to partition exists, if the court finds that the interest of the owners will be best promoted by a sale of the land and division of the proceeds instead of a division of the land itself, our statutes authorize such a sale upon application by the proper parties. *Contaldi* v. *Errichetti*, 79 Conn. 276, 277, 64 Atl. 219.

Furthermore, the mortgage deed itself provided for the sale of the property after foreclosure and the division of the proceeds proportionately among the noteholders as follows: "If upon the proceedings for a foreclosure of this mortgage a decree of strict foreclosure shall be passed, and the equity of redemption of the grantors shall have been extinguished, the trustee shall hold title to the aforesaid mortgaged premises in trust for the owners or holders of said notes, to be sold, disposed of, or conveyed by said trustee at its option, for such prices and upon such terms and conditions as said trustee may deem for the best interest of such note

owners or holders, and the purchaser or purchasers of said property shall take and hold the same free and discharged from any trust and from the obligation to see to the disposition of the proceeds of such sale." The same language appeared in the mortgage deed involved in the case of *Hoffman* v. *First Bond & Mortgage Co., Inc.,* 116 Conn. 320, 324, 164 Atl. 656. We there said (pp. 328, 329) it was the duty of "the trustee to hold and administer the property acquired thereby until such time as it can be disposed of without unnecessary sacrifice and loss to the noteholders. . . . The right and duty is subject to termination at the instance of either the trustee or noteholders whenever it is shown that conditions require or warrant it." The only proper way to terminate the trust is by the sale of the property and the conditions present certainly are not such as would warrant the sacrifice of a considerable part of the value óf the property by its immediate sale.

There is no error.

In this opinion the other judges concurred.