Belknap,
March 7, 1939. } No. 3035.

FRANKLIN HOLLIS, *Guard'n ad litem*

*v.*

FRANK P. TILTON, *Guard'n.*

*Demond, Sulloway, Piper & Jones (Mr. Franklin Hollis, pro se, orally),* for the plaintiff.

*Richard F. Upton, Frank A. Tilton, Frank P. Tilton, pro se,* and *Robert W. Upton (Mr. Robert W. Upton* orally), for the defendant.

*Per Curiam.* A majority of the court are of the opinion that no constitutional provision requires the appointment of a guardian *ad litem* for a decree of the probate court in the settlement of a guardian's account to have the full force and effect of a final judgment. However, a majority are of the opinion that in the exercise of reasonable discretion one must be appointed pursuant to the statute (P. L., c. 289, s. 1) to give the decree such character, if the ward has not meanwhile become *sui juris,* or has not deceased.

The defendant has offered evidence to show that a copy of each of the first three accounts was sent to a brother of the ward, as her nearest relative, followed by his approval in each instance before any allowance by the court, and that when the third account was filed the brother appeared by an attorney, who later consented to the allowance of the account. The purpose of the evidence is to support the claim that the ward was in fact represented in the settlement of the accounts by her brother as a next friend.

It does not appear that the brother undertook to act for the ward in such capacity. The appearance entered by his attorney was for him; as one who might be an heir of the ward if he survived her, he was interested only for himself, so far as is shown. Furthermore, when one *non sui juris* becomes a party to a proceeding not instituted by him, any representation for him must have official appointment or authorization, and unless otherwise provided by statute a guardian

*ad litem* is the more appropriate representation. Except in bringing actions the office of next friend has no common-law standing. This is the rule declared in *Clarke* v. *Gilmanton,* 12 N. H. 515, a case in which the procedural situation is substantially the same as in the case here.

The defendant asserts that the ward is the "moving" party in any hearing on a guardian's account, but this position is untenable. The guardian, filing his account, and seeking its allowance, stands as a claimant, while the ward, in any contest over it, stands as a defendant seeking to defeat the claim against him. The guardian petitions that the account be allowed, while the ward joins issue in objection and protest. It is for the guardian to establish the merits of the account.

Even if the distinctions between a guardian *ad litem* and next friend are regarded as belonging to an outworn technique, it remains that unless the next friend acts under judicial appointment in a proceeding not brought by him, his authority to act in such capacity must be denied. To hold that he may bind the ward would validate an irregular procedure and a shadowy authority. As a method of protecting the ward's rights, it is not to be commended or countenanced, when a more authentic and authoritative method is readily available. As already suggested, the effectiveness of a chance volunteer's assistance to meet the ward's need of help and protection seems illusory.

In *Tripp* v. *Gifford,* 155 Mass. 108, it was held that a next friend of an infant could not compromise or settle a suit brought for the infant unless judicial sanction for his action affirmed it. The case here is on comparable equality with it. The ward's brother assumed no responsibility judicially imposed on him, and no judicial sanction for his consent to the accounts is shown. His consent to the account in connection with which he entered an appearance implied no responsible examination and investigation of it, nor was consent equivalent to a report in behalf of the ward as an incident of due procedure relied upon and adopted by the court. It was no more, in practical effect, than a withdrawal of appearance, leaving the ward without such uncertain and indefinite representation as the appearance may have furnished. In this respect the case is in no conflict with that of *Beliveau* v. *Company,* 68 N. H. 225. There an action instituted for a minor by a next friend was entered in court and thereafter settled by an agreement for judgment. The next friend in bringing the action required no actual official appointment, and judicial

sanction of the settlement was implied from the entry of the agreement for judgment. *Eaton* v. *Eaton, ante,* 4. There was a dissent to the decision in the *Beliveau* case, and principle and justice permit no extension of the authority therein declared of a next friend when the authority is official only by strained implication, and is irregular, vague and superficial.

The decrees allowing the three accounts are without conclusive effect upon the ward, and the appeal from the dismissal of the petition to have them reopened as though there had been no hearings or decrees upon them should be sustained.

The defendant was the agent of the surety company which signed with him his guardianship bond. The annual premium charges by the surety have been paid from the ward's estate, and the defendant as its agent has received commissions thereon as such agent. The question is transferred whether the plaintiff may raise the question of the defendant's duty to account for the commissions as belonging to the ward. Since, as to the ward, there have been no proper hearings and no valid action taken upon the accounts under consideration, the question is answered affirmatively. In a literal limitation, the question calls for no determination of the alleged duty. But it is understood that the issue of the duty, if it might be raised, was also intended to be a matter of inquiry in the transfer, and it is considered.

The principle that a fiduciary can make no profit out of the trust estate is generally held to be strict and rigid. "... the guardian's trust is one of obligation and duty, and not one of speculation or profit, and is governed by strict rules. He cannot reap any benefit from the use of the ward's money. He cannot act for his own benefit in any contract, or purchase, or sale, as to the subject of the trust." *French* v. *Currier,* 47 N. H. 88, 98. The theory is that a trustee should not place himself in a position where the influence of self-interest may tempt him to take advantage of the beneficiary. "The rule in such cases springs from his [the trustee's] duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity." *Magruder* v. *Drury,* 235 U. S. 106, 119.

But the rule should not be applied in so arbitrary a manner as to produce inequitable results of undue hardship. While the trustee

may not profit from the trust, he should not be required to bestow gifts upon it. ". . . the policy of the law ought to be such as to induce honorable men, without a sacrifice of their private interest, to accept the office, and to take away the temptation to abuse the trust for mere selfish purposes as the only indemnity for services of an important and anxious nature." 2 Story, Eq. Jur. *s.* 1268n. The qualification that a trustee should not be called upon to sacrifice his personal interests is not so unreasonable that it should have no allowance.

A corporate trust company would hardly be required to furnish rent free a safety deposit box for the securities of a trust of which it was the trustee. If a trustee of real estate has occasion to purchase materials for needed repairs, it would seem a harsh requirement that he could not buy them from a store in which he had an interest. If he were an insurance agent, the injustice of depriving him of commissions on policies of insurance for the building would seem even more striking. The beneficiary's claim to the commissions would be in the nature of a penalty, which the law disfavors in civil matters.

In *Turnbull* v. *Pomeroy*, 140 Mass. 117, a partnership was allowed to retain commissions on the sale of goods consigned to it by a manufacturing business of which one of the partners was a trustee. One reason assigned for the allowance was that "there may be circumstances under which he [the trustee] may be allowed an additional sum for extraordinary services which it was not his duty to render,— the allowance not standing on contract any more than in the common case, but being subject to the discretion and control of the court."

In obtaining a bond and paying annual premiums, nothing was done which was not a proper charge and expense against the ward's estate, if another person had been the surety's agent. "Every guardian shall be allowed a reasonable compensation for all proper expenses and services in the discharge of his trust." P. L., *c.* 289, *s.* 6. He must give a bond to the court with sureties, for the faithful discharge of his trust, in such amount as the court finds reasonable. *Ib.*, *s.* 2. The protection thus afforded seems ample to meet any inducement to obtain a bond unreasonably large in amount or at an excessive premium rate. The duty to protect the ward's rights imposes no duty to make personal contributions not fairly derived from the office of guardian and not fairly involving a conflict between personal and fiduciary interests.

While the right of the ward is a right more extensive than the right not to suffer actual injury, it is not a right to an inequitable benefit

from honest dealings in which no imputation of taking advantage of the office may reasonably be charged. If the duties of "self-denial," "an integrity that will be above mercenary motives," "diligent attention," and "a single eye to the interest of his wards" (*Sparhawk* v. *Allen*, 21 N. H. 9, 26) are not violated, there can be no just claim of dereliction.

If a guardian may be compensated for extraordinary or special services, as in acting as an attorney in legal proceedings in which his ward's interests are involved (*Wendell* v. *French*, 19 N. H. 205, 210), it is consistent that he should be allowed to retain the gains of his personal business when conflict with his fiduciary obligations is nebulous as a practical matter.

In *Tucker* v. *Company*, 69 N. H. 187, a trust company which deposited funds of which, under statutory authority, it was the trustee, in its savings department, was held to have acted properly in so doing, and the deposit had no preference over other deposits in the subsequent insolvency of the trustee. The guardian here had to select a surety company which might do business locally. P. L., c. 310, s. 2. Having selected such a company, he should be as much entitled to his commission as the trustee bank in the *Tucker* case had the right to deposit the trust fund in its own savings department.

The equities of a case properly depend upon its special circumstances, and no defined line of application may be drawn. The equities here are considered to be resolved to permit the guardian to retain the commissions. The principle that a fiduciary must not do business with himself personally is not discounted. The virtue of a general principle is often maintained, and at times strengthened, by exceptions to it.

*Case discharged.*