Strafford County Probate Court
No. 83-096

## *In re* GUARDIANSHIP OF RICHARD A.

February 3, 1984

*Ronald K. Lospennato* and *M. Elaine Beauchesne*, Developmental Disabilities Advocacy Center, Inc., of Concord, by brief for the plaintiff.

*Maureen E. Dunnigan*, Office of Public Guardian, of Concord, by brief, as amicus curiae.

*John G. Richardson*, of Rochester, guardian ad litem, waived brief and oral argument.

PER CURIAM. This case involves the standards for judging the indigency of wards and the scope of a fiduciary's duty to a ward. The plaintiff ward filed a petition to have his guardian removed. The guardian tendered his resignation and submitted his sixth and final account, to which the plaintiff objected. The Strafford County

Probate Court (*Cassavechia*, J.) terminated the guardianship but denied the objections to the sixth and final account. We remand for proceedings consistent with this opinion.

On October 13, 1977, the plaintiff's grandmother, Florence R., petitioned the probate court for the appointment of a guardian of the person and estate of Richard A. *See* RSA 464-A:4. The Court (*Galanes*, J.) appointed a guardian ad litem, and subsequently appointed Paul B. Urion, Esq., guardian of the person and estate of Richard A.

The plaintiff's chief source of income prior to and throughout the guardianship has been monies received from the Supplemental Security Income (SSI) program. He also received nominal additional income by performing odd jobs for local businessmen. In June 1982, the guardian was notified by the Social Security Administration that it had overpaid Richard A. by $351.72 during 1974 and 1976. The Social Security Administration contended that the overpayments were caused by the plaintiff's failure to report his receipt of additional income. The guardian apparently agreed with the Social Security Administration and authorized a $15 per month deduction from the plaintiff's SSI checks until the overpayment was recovered.

The plaintiff sought the advice of attorneys at the Developmental Disabilities Advocacy Center, Inc., and they filed a petition on his behalf on December 10, 1982, for the removal of the guardian. On January 10, 1983, the guardian tendered his resignation and submitted his sixth and final account through the new guardian ad litem.

A hearing was held on January 14, 1983, in the Strafford County Probate Court (*Cassavechia*, J.) on the petition to remove the guardian. The court terminated the guardianship, accepted the guardian's resignation, and allowed the sixth and final account pending receipt of the remaining funds by the ward.

The plaintiff then filed an objection to the report of the guardian ad litem and to the sixth and final account of the guardian, in which he contended that: the guardian had failed to file a final report of the guardian of the person; the plaintiff's SSI benefits should not have been reduced, because the guardian should have applied for a waiver of the overpayment recoupment; and the plaintiff should not have been charged for court costs, attorney's fees, and guardian expenses because he is indigent. These objections were denied, and the sixth and final account was allowed as submitted.

The plaintiff then filed a motion to waive costs. A hearing was held on April 5, 1983, and the motion was denied. This appeal followed.

This appeal presents only two questions that were briefed for our determination: whether the probate court erred when it denied the objection to the sixth and final account because the plaintiff was indigent as a matter of law; and whether the court erred when it denied the objection to that account because the guardian breached a fiduciary duty to the plaintiff in failing to request a waiver of the overpayment recoupment.

 On December 2, 1981, we issued Administrative Order 81-5A setting forth guidelines, procedures, and forms for use by all courts when considering and processing requests for appointment of counsel by indigent persons. Considering those levels by analogy, we find that the plaintiff's income of $3,430.65 in 1982 made him indigent as a matter of law.

 The plaintiff contends that the guardian stands in a fiduciary relationship to him and that the guardian breached his fiduciary duty when he failed to request a waiver of the overpayment recoupment. See 42 U.S.C.A. § 1383(b)(1) (Supp. 1983). In 1850, we stated that "[a] guardian is a person upon whom the law imposes the duty of looking after the pecuniary interests of his wards." *Sparhawk v. Allen*, 21 N.H. 9, 27 (1850). Also, in *Sparhawk*, we asked rhetorically: "If the law requires in a guardian neither self-denial, nor an integrity that will be above mercenary motives, nor a diligent attention, nor a single eye to the interests of his wards, why is he appointed?" *Id.* at 26; *see also Hollis v. Tilton*, 90 N.H. 119, 124, 5 A.2d 29, 37 (1939). The New Hampshire legislature has recognized the purpose of guardianships: "to promote and protect the well-being of the proposed ward . . . to provide procedural and substantive safeguards for civil liberties and property rights. . . ." RSA 464-A:1.

The powers and duties of guardians as set forth in RSA 464-A:26, I reflect the high degree of responsibility entrusted to guardians:

> "take possession of all of the ward's real and personal property. . . . It is the duty of the guardian of the estate to protect and preserve it, to retain, sell and invest it as hereinafter provided, prosecute or defend actions, claims or proceedings in any jurisdiction for the protection of the estate's assets, to account for it faithfully, to perform all other duties required by law, and at the termination of the guardianship to deliver the assets of the ward to the persons entitled thereto."

 We have said that a "conservator [is] under a fiduciary duty to collect and honestly account for all the assets of his ward." *Massachusetts Bonding Co. v. Keefe*, 100 N.H. 361, 364, 127 A.2d

266, 268 (1956); *see Yeaton v. Skillings,* 103 N.H. 352, 354, 172 A.2d 354, 356 (1961); *see also Butler v. Legro,* 62 N.H. 350, 352 (1882). "A conservatorship is frequently referred to as a voluntary guardianship . . . [and] a conservator has the same powers and obligations as a guardian in so far as they relate to the property of the ward." *Crawford v. Widett,* 100 N.H. 115, 117–18, 121 A.2d 314, 316 (1956); *see* RSA 464-A:18. Historical principles, our own common law, and the clear intent of the legislature compel our conclusion that a guardian stands in a fiduciary relationship to his ward.

The plaintiff argues that the guardian breached his fiduciary duty as a matter of law when he failed to apply for a waiver of the overpayment recoupment. We cannot make this determination based on the scant record before us, and therefore, remand for a hearing on that issue.

■ We note, however, that SSI overpayments are caused by a number of different factors, and that the recipient is not always at fault:

> "The process of converting individuals from the state programs into the SSI program resulted in the largest source of overpayment errors. Program administrators have cited other reasons for SSI overpayments including: failure of claimants to provide accurate information to agency officials; failure of federal employees to conduct detailed interviews of prospective SSI recipients; undetected post-entitlement changes in claimants' incomes; and failure of the SSA to act promptly on reported changes in claimants' financial positions. Also, many overpayment errors can be traced directly to the SSA's antiquated computer system."

Note, *Supplemental Security Income Overpayments: Judicial Response to Administrative Decisions Which Deny Waiver of Recovery,* 18 N. ENG. L. REV. 899, 901–02 (1983) (citing *Administration of the Supplemental Security Income Program: Hearing Before the Subcomm. on Oversight of the House Comm. on Ways and Means,* 94th Cong. 1st Sess. 1–36 at 15 (1975)).

*Remanded.*